**Betty T. SIMMS, Plaintiff,**

v.

**Caspar W. WEINBERGER, Secretary of Health, Education and Welfare, Defendant.**

**No. 73-532-Civ-J-S.**

United States District Court, M. D. Florida, Jacksonville Division.

April 25, 1974.

Giles P. Lewis, Jacksonville, Fla., for plaintiff.

Harvey E. Schlesinger, Asst. U. S. Atty., Jacksonville, Fla., for defendant.

## ORDER AND OPINION

CHARLES R. SCOTT, District Judge.

This Social Security disability case came before this Court for hearing on the Secretary's motion for summary judgment, filed herein December 13, 1973. For the reasons set forth below, defendant's motion will be denied and summary final judgment will be entered, *sua sponte,* in favor of the claimant. 6 J. Moore, Federal Practice ¶ 56.12, at 2241 (2d ed. 1974).

This is an action under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Secretary of Health, Education and Welfare denying disability benefits to the plaintiff.

The final decision was that the claimant-plaintiff was not disabled within the meaning of the Act at any time prior to September 30, 1968, which both parties agree is the date upon which the claimant's insured status, for purposes of disability, expired.[1] The sole issue before

---

1. Sections 216(i)(3) and 223(c)(1)(B) of the Act require that the "disability" (as defined in the Act) must arise while the claimant possesses an "insured status" in that the plaintiff must have at least 20 quarters of employment coverage during the 40-quarter period which ends with the quarter of "disability". Dillingham v. Cohen, 403 F.2d 213 (5th Cir. 1968); Henry v. Gardner, 381 F.2d 191 (6th Cir. 1967), cert. den. 389 U.S. 993, 88 S.Ct. 492, 19 L.Ed.2d 487 (1967); Carter v. Celebrezze, 367 F.2d 382 (4th Cir. 1966). The administrative record reflects that, in August 1956, Mrs. Simms commenced work as a PBX operator, receptionist and inventory clerk for the Meyer Fish and Produce Company, Jacksonville, Florida. Thereafter, she worked for the Glidden Company, Jacksonville, as a PBX operator and receptionist from August 1959 to May 1963. She stopped work in 1963 because of the birth of a child and did not work thereafter, except for one week in July 1968 and for two weeks in July 1969 when she returned to work at the Glidden Company as a PBX operator.

this Court is whether the Secretary's final decision is supported by "substantial evidence".

## I—SUMMARY OF THE EVIDENCE

The plaintiff is a 41 year old female who has a high school education and since high school has either been a housewife or a PBX operator and receptionist. She has never had any special job training and her insured status under the Act expired on September 30, 1968.

The undisputed evidence indicates that Mrs. Simms is now permanently disabled with multiple sclerosis. However, the plaintiff cannot recover disability insurance benefits unless she can demonstrate that this progressively degenerative disorder was sufficiently severe so as to render her "disabled" within the meaning of Section 223(d)(1)(A) of the Act, 42 U.S.C. § 423(d)(1)(A), prior to expiration of her insured status on September 30, 1968.

The evidence before the administrative law judge consisted of both live testimony and documentary medical evidence. The three live witnesses were Mrs. Shirley Mohr, the claimant's former neighbor, Mrs. Simms herself, and her husband, Virgil A. Simms.

Mrs. Mohr testified that she had known the plaintiff since about 1955 or 1956 and that she has had contact with her on a continuing basis at least once a week since that time. She said that the claimant fell in a grocery store about 12 years ago for no apparent reason. She further stated that Mrs. Simms' hands became "affected with a condition she was unable to identify"; that in 1967 the claimant became unable to lift pans in her kitchen; and that she was unable to go shopping after late summer of that year. She became unable to walk over 30 minutes at a time, to sew, cook or to do any of her housework, much less work at gainful employment. Mrs. Mohr further testified that, at that time, the claimant " . . . couldn't keep up with her little girl" and drove her automobile "very little". Mrs. Mohr usually found the plaintiff in bed when she visited the plaintiff's home. In addition, it became increasingly difficult for Mrs. Simms to arise from a prone position and she stumbled frequently. Furthermore, she never left the house without her husband.

Mr. Simms testified that his wife's condition commenced in 1958 when her left side, including her left arm and left leg, became numb, which condition persisted some three months and for which she received medical treatment. The symptoms reappeared in June 1967, with the additional symptoms of severe dizziness, loss of balance, acute weakness, diplopia (double vision) and inability to move her right leg. As a result, Mr. Simms and his mother permanently assumed the family housekeeping responsibilities.

Mrs. Simms corroborated the foregoing testimony and further testified with regard to her attempts to return to work with her previous employer in July 1968 for one week and in July 1969 for two weeks in order to "fight" the condition. She testified that she was unable to perform the work required of her as a receptionist in that she could not escort visitors through the plant as she did in the past because of extreme fatigue. She had to ask others to relieve her for brief periods at least every hour so she could lie down and rest. She could not walk up steps which did not have a rail and, on one occasion, she fell down some stairs. Because she could not "hold out" physically she was forced to quit her job. She could not adequately perform the tasks required of her.

The documentary medical evidence fully corroborated the live testimony and was quite extensive. The final diagnosis upon her discharge from St. Vincent's Hospital on May 20, 1969, was that she had multiple sclerosis, characterized by remissions and exacerbations. Reference was made therein to an episode of diplopia in June 1968 when the plaintiff became unable to turn her left eye to the side. This was followed by a

remission of these symptoms, which, in turn, was followed by a recurrence which persisted approximately six weeks, only to subside once again. Reference was also made to the paralysis which occurred in 1967 and which Mrs. Simms testified alternated one side of her body to the other. Upon readmission to St. Vincent's in 1971, the discharge diagnosis was once again multiple sclerosis.

Three physicians who personally treated the plaintiff rendered unqualified medical opinions that the plaintiff was disabled prior to September 30, 1968. Doctor Howard C. Chandler, a board-certified neurosurgeon who has treated Mrs. Simms on a continuous basis since April 15, 1958, concluded that she became unable to engage in substantial gainful activity in September 1967, a year before her insured status expired. Doctor Jacob Green, another neurosurgeon who examined the plaintiff in May 1969, concluded that she was disabled prior to September 1968. Doctor Charles O. Joest, an obstetrician and gynecologist who has treated her from November 30, 1965, until the present on a continuous basis, concluded that the symptoms of multiple sclerosis became manifest on or about April 13, 1966, and have progressively increased in severity since that time. Doctor Joest felt "certain" that she became unable, both mentally and physically, to work prior to September 30, 1968.

The only evidence in the administrative record to indicate that the plaintiff was not disabled on or before September 30, 1968, is the conclusion of the Social Security disability review physician [2] to that effect. It should be pointed out that the disability review physician never personally examined the plaintiff but only reviewed a cold record which did not include the medical reports of Doctor Green and Doctor Joest or a complete record from St. Vincent's Hospital.

2. Section 221 of the Act, 42 U.S.C. § 421, provides for the initial determination of disability to be referred to a state agency

## II—BASIC STATUTORY AND ADMINISTRATIVE FRAMEWORK

Section 223(d)(1)(A) of the Social Security Act, 42 U.S.C. § 423(d)(1)(A), defines "disability" as follows:

. . . inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months;

Section 223(d)(3) of the Act, 42 U.S.C. § 423(d)(3), provides:

For purpose of this subsection, a "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

The pertinent HEW regulation, 20 C.F.R. § 1506, Subpart P., App. 11.09, provides that the requisite level of severity for the neurological disorder of multiple sclerosis includes the following impairments:

A. Moderate motor deficits in two extremities; or

B. Ataxia substantiated by appropriate cerebellar signs or proprioceptive loss.

## III—APPLICATION OF THE LAW TO THE FACTS

The administrative law judge concluded that "Mrs. Simms' state of health had not, by *September 30, 1968*, reached the point where she was so handicapped and so impaired that she was from that point in time precluded from all work activity leading to the accomplishment of substantial gainful activity". This Court concludes that the administrative law judge's decision was not supported by "substantial evidence" and that, in addition, he misapplied his own regulation in reaching his decision.

which decision is reviewable by the Secretary through the Bureau of Hearings and Appeals.

First of all, the administrative law judge's denial of the plaintiff's claim for disability benefits can be supported only by the conclusory opinion of the *non-examining* disability review physician that the claimant was not "disabled" within the meaning of the Act on or before September 30, 1968. When viewed in the light of the medical opinions of three *examining* experts to the contrary, together with the uncontroverted testimony of Mrs. Mohr, Mrs. Simms and Mr. Simms that the plaintiff was unable to engage in normal housework activities much less "substantial gainful activity", it cannot be said that the administrative law judge's opinion was bottomed on substantial evidence. The medical opinion of the disability review physician, predicated as it is on a record bereft of personal observation and professional contact, simply cannot withstand the overwhelming opposing evidence of physical impairment presented herein.

In this regard, the Court is inclined to follow the law as expressed in the recent Fourth Circuit case of Martin v. Secretary of HEW, 492 F.2d 905 (1974), wherein it was held that ". . . a non-examining physician's opinion cannot, by itself, serve as substantial evidence supporting a denial of disability benefits when it is contradicted by all the other evidence in the record". 492 F.2d at 908. *See also* Hayes v. Gardner, 376 F.2d 517 (4th Cir. 1967). This Court agrees with the Fourth Circuit's reasoning that " . . . an examination of a claimant adds such significant weight to a medical opinion as to the presence or absence of disability that, without it, the opinion standing alone, cannot constitute substantial evidence to support a conclusion which relies solely on it. *See* Browne v. Richardson, 468 F.2d 1003, 1006 (1 Cir. 1972)".

In addition, it appears that the Social Security physician's conclusion, in turn, was based on an incomplete record in that it was based entirely on Doctor Chandler's report dated February 18, 1972, and the discharge diagnosis from St. Vincent's Hospital dated March 1, 1971. Thus it appears that the Social Security physician did not have the benefit of the medical report of Doctor Green dated November 3, 1973, Doctor Chandler's letter to the claimant's attorney dated November 7, 1972, the medical report of Doctor Green dated November 27, 1972, the medical report of Doctor Joest dated January 9, 1973, the deposition of Doctor Chandler taken January 9, 1973, and the hospital reports of May 15, 1969. Therefore, this Court concludes that the administrative law judge's decision was not supported by substantial evidence.

Alternatively, the administrative law judge appears to have misapplied his own regulation. As pointed out above, one of the two indices in the HEW regulations of sufficient severity of multiple sclerosis so as to constitute disabling impairment is "moderate motor deficits in two extremities". The evidence conclusively establishes that Mrs. Simms suffered at least moderate and probably severe motor deficits in both of her arms and her legs as early as September 1967. It will be recalled that the evidence showed that, at that time, Mrs. Simms' right leg could not move at all and that she was forced to drag it. In addition, the movement of her hands was so restricted that she could not sew, hold pans, cook or perform other forms of housework. Furthermore, when Doctor Chandler examined her on September 12, 1967, her left arm and her left leg were numb and thus incapable of movement or feeling. On June 11, 1968, Doctor Chandler noted that she had "sixth nerve paralysis on her left side". This uncontroverted evidence clearly establishes that the plaintiff experienced at least "moderate motor deficits" in at least two (and probably four) extremities, as required under the regulation, prior to September 30, 1968.

As an alternative basis for a disabling impairment, the regulation requires "ataxia substantiated by appropriate cerebellar signs or proprioceptive loss". In layman's terms, what is required is a severe loss of coordination. The record is replete with references to Mrs. Simms' inability to walk, arise from a

prone position, sew, hold pots and pans, cook and perform her housework because of dizziness, clumsiness and lack of motor coordination. Therefore, this Court concludes that the administrative law judge misapplied the law stated in his own regulations to the facts of this case.

This conclusion is not altered by the fact that the plaintiff experienced fluctuations in the severity of the symptoms since by the Secretary's own concession this fact is characteristic of multiple sclerosis.[3]

■ The Secretary asserts, as a significant fact, the claimant's statement on her initial application for disability benefits that her disability commenced on May 10, 1969, some seven and a half months after her insured status expired, which statement was later modified by her to reflect September 12, 1967, as the initial date of disability. This Court is unwilling, however, to attach unwarranted importance to such a statement when there is nothing in the record to suggest that she was aware that September 30, 1968, was the date on which her insured status expired. In other words, she might not have known that any particular date of commencement of disability was significant to recovery. Besides, as a layman, she cannot be charged with absolute accuracy as to what is essentially a medical-legal conclusion.

■ The Secretary also attaches importance to the fact that Mrs. Simms worked one week in July 1968 and two weeks in July 1969, thereby indicating her ability to engage in "substantial gainful activity". In this regard, 20 C.

F.R. § 404.1532(a) provides in pertinent part as follows:

> If an individual performed work during any period in which he alleges that he was under a disability . . . the work performed may demonstrate that such individual has ability to engage in substantial gainful activity. If the work performed establishes that an individual . . . is able to engage in substantial gainful activity, he is not under a disability.

However, subsection (d) of that same section provides in pertinent part as follows:

> The adequacy of an individual's performance of assigned work is also evidence as to whether or not he has ability to engage in substantial gainful activity. The satisfactory performance of assignments may demonstrate ability to engage in substantial gainful activity, *while an individual's failure, because of his impairment, to perform ordinary or simple tasks satisfactorily without supervision or assistance beyond that usually given other individuals performing similar work, may constitute evidence of an inability to engage in substantial gainful activity.* . . . (emphasis added)

20 C.F.R. § 404.1534(a), with respect to evaluation of earnings from work provides in pertinent part:

> . . . Where an individual is forced to discontinue his work activities after a short time because his impairment precludes continuing such activities, his earnings would not dem-

---

3. In the Secretary's memorandum in support of his motion for summary judgment, reference is made to the Attorneys' Textbook of Medicine by Roscoe N. Gray, M.D., 3rd Edition, Volume 3A, Paragraph 88.68(4), wherein it is quoted in pertinent part as follows:

   *Trauma and Multiple Sclerosis*

   Multiple sclerosis is a demyelinating disease involving the central nervous system. By "demyelination" is meant that there is a loss of the myelin insulating sheaths about the nerve fibers in the tracts of the brain and spinal cord. This loss of pro-tective myelin sheaths is *patchy and diffusely scattered. As a result the clinical signs and symptoms are variable.* As a general rule there are signs and symptoms of sensory impairment (numbness, tingling, pins-and-needles) in various areas of the body, impairment of coordination leading to tremors, incoordination for skilled movements and ataxia of gait, changes in reflexes and muscle tone (spasticity) and visual impairment due to retrobulbar neuritis and optic atrophy. *These signs and symptoms come and go.* (emphasis added)

onstrate ability to engage in substantial gainful activity. . . .

In the instant case, the evidence conclusively demonstrates: (1) the plaintiff's inability to perform satisfactorily even simple and mechanical tasks on her job because of her mental and physical impairments; and (2) her being forced to quit after only a short time because she simply could not "hold out" physically. Therefore, the fact that the plaintiff worked those brief periods would, under the attendant circumstances presented, seem to bolster her case rather than detract from it. Besides, Mrs. Simms should not be penalized for her perseverance and courage in seeking to overcome her disability.

Therefore, it is

Ordered:

1. Defendant's motion for summary judgment, filed herein December 13, 1973, is hereby denied.

2. Summary final judgment is hereby entered in favor of the plaintiff.

3. This case is hereby remanded to the Secretary of Health, Education and Welfare for determination of the precise amount of disablity benefits to which the plaintiff is entitled under the Social Security Act of 1935.