Karen DETAMORE

v.

**Richard S. SCHWEIKER, Secretary of Health and Human Services.**

**Civ. A. No. 82–5247.**

United States District Court, E.D. Pennsylvania.

June 1, 1983.

Richard Weishaupt, Community Legal Services, Philadelphia, Pa., for plaintiff.

Peter F. Vaira, U.S. Atty., Stanley Weinberg, Asst. U.S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM

NEWCOMER, District Judge.

This action is brought under 42 U.S.C. § 405(g) and § 1383(c)(3) to review a final decision of the Secretary of Health and Human Services ("Secretary") denying the plaintiff's claim for disability benefits under Title II and Title XVI of the Social

Security Act. The parties have filed cross motions for summary judgment.

In April of 1981, the plaintiff, Ms. Detamore, applied for disability benefits. She claimed that her disability had commenced in February, 1981, when a degenerative disc disease of the lower back forced her to quit her job as a paralegal. The Administrative Law Judge ("ALJ") determined that the plaintiff was not entitled to disability benefits because her impairment "did not preclude her from performing her past relevant legal and administrative jobs for any continuous period of twelve months or longer." (Tr. 12). The ALJ based his decision on the plaintiff's law school attendance during some of her claimed period of disability.[1]

The ALJ concluded that the plaintiff's ability to attend law school was conclusive evidence that the plaintiff would have been able to perform her job as a paralegal. After subtracting the periods that the plaintiff attended law school from the period of the claimed disability, the ALJ found that the plaintiff had not shown that she had an impairment which would last for a period of at least twelve months.[2]

The issue before the Court is whether the decision of the ALJ denying disability benefits to the plaintiff is supported by substantial evidence.

In reaching his conclusion the ALJ considered only the apparent ability of the plaintiff to concentrate despite her pain and failed to account for her undisputed physical impairments.[3] The record presents a wealth of unrebutted medical evidence substantiating the plaintiff's disability claim.

The reports of Dr. Leonard A. Bruno, M.D., a neurosurgeon and plaintiff's attending physician for over three years, revealed that by February, 1981, the plaintiff was "unable to ambulate or do the activities of daily living" because of her back condition. (Tr. 137, 141). The condition did not improve significantly and necessitated surgery in June, 1981, from which the plaintiff began a long period of recovery. In April, 1982, almost a year after surgery, Dr. Bruno issued a report detailing the substantial limitations still facing Ms. Detamore.[4] He

---

1. Although the ALJ stated that the plaintiff's "current level of daily functioning, including attendance at law school," mitigated against a finding of disability, he points to no other evidence of "daily functioning" other than the school attendance. An independent review of the record reveals no evidence of other "daily functioning" supporting his decision. It appears, therefore, that the sole basis for the ALJ's decision was the plaintiff's law school attendance.

2. The plaintiff claimed disability from February, 1981 but was expected to recover by December, 1982. Because of her periods of law school attendance and her prognosis for eventual recovery, the ALJ determined that the plaintiff could not establish that her impairment had lasted, or could be expected to last, for a continuous period of twelve months or more as required by the Social Security Act. See 42 U.S.C. § 1382c(a)(3)(A).

3. The ALJ found that "while the claimant experienced pain associated with her lumbar disc disease, her current level of daily functioning, including attendance at law school, mitigates against a finding that the associated pain is of such frequency, severity, and duration, as to preclude her from concentrating on her job duties." (Tr. 12).

4. Dr. Bruno made the following statement in his report: "Following surgery in June, 1981, Ms. Detamore has slowly and progressively improved but continues at the present time to have severe low back problems including pain, muscle spasms and lower extremity pain. Flexion and tilting of her lumbar spine is severely limited to approximately 10% of normal even at the present time.... At the present time living arrangements are such that she wears a lumbosacral corset at all times and still relies heavily on friends to run errands for her, do housecleaning, help her with laundry and preparation of meals. Her attendance at class in law school has been severely limited due to her lumbosacral muscle spasm and pain in the lower extremities and since early in 1980 had permission from her school authorities to take classes lying down. This she does in order to avoid pain in her low back and lower extremities from sitting for longer than half an hour.... I have told her not to lift anything heavier than an average text book or approximately 2 to 5 lbs., to absolutely avoid all bending, stooping, crawling, or climbing, and to not drive an automobile. I asked her to ride only as a passenger in an automobile and if her low back or lower extremity pain increases, to then lie down in the back seat while being transported from place to place." (Tr. 173–175).

further stated that, "My opinion is that while Ms. Detamore might be able to continue with her schooling for the remainder of this calendar year with all of the special arrangements in force, I think it is unrealistic for her to attempt to perform any type of work, even if it is primarily sedentary in nature." (Tr. 174). In Dr. Bruno's opinion, it would take an additional 6 to 8 months for her to recover sufficiently to attempt sedentary work. (Tr. 175).

Dr. Bruno's conclusions are supported by two other medical reports of record.

Kenneth Frank, M.D., an orthopedic surgeon, assisted Dr. Bruno with the plaintiff's operation. He examined her in May, 1981, prior to the operation. At that time, he found her mobility severely limited and described her disability as "essentially total." (Tr. 147–148).

Dr. Thakarar, a specialist in physical medicine and rehabilitation who was the Social Security consulting physician, also examined the plaintiff in May, 1981. He diagnosed her impairment as resulting from "discogenic disease and degenerative joint disease of the lumbar spine" and recommended that she "avoid prolonged sitting, standing, walking, crawling, climbing up and down steps, as well as any activity that requires bending over. She should also avoid doing any pushing and pulling, as well as lifting any heavy objects." (Tr. 152).

■ In support of his decision, the Secretary offered no medical evidence to rebut the evidence of the plaintiff's treating physician. The law requires that the treating physician's opinion cannot be rejected unless contradicted by other medical evidence of record. *Rossi v. Califano,* 602 F.2d 55 (3d Cir.1979); *Smith v. Califano,* 637 F.2d 968 (3d Cir.1981).

■ The unrebutted medical opinion of Dr. Bruno, plaintiff's treating physician, supports her claim of disability from February 1981 because of her lumbar disc disease. (Tr. 137, 141, 174). The opinion of Dr. Bruno is clear and unequivocal and is corroborated by the other medical evidence of record. Therefore, I find that under the law of this Circuit the ALJ was obliged to find the plaintiff disabled within the meaning of the Social Security Act.

The ALJ's belief that the plaintiff could not be considered disabled while a law student is without merit.

The uncontested evidence clearly shows that the plaintiff was able to attend law school only under severe restrictions and limitations. Her classes were scheduled for only three days per week. Because of her back condition, the school allowed her to lie on the floor for almost all of her classes. (Tr. 36). She was allowed to lie down in a separate room to take exams and was given extra "break time" during the exams. (Tr. 36). Even so, her disability forced her to miss almost half of her classes and the school waived its usual attendance requirements in her case. (Tr. 55). The credibility of this evidence was not questioned. Indeed, it is supported by the reports of Dr. Bruno and the testimony of Holly Maguigan, the plaintiff's former supervisor and an instructor at the law school.

It is apparent that the plaintiff was able to attend law school only by extraordinary perseverance and with substantial accommodations by the school.

I find that the plaintiff's limited ability to attend school does not support the conclusion that she retained the functional ability to perform substantial gainful activity as defined by the Social Security Act. 20 C.F.R. § 404.1572 (1982).[5]

Upon evaluation of the record as a whole, I find no dispute as to material fact. The plaintiff is entitled to benefits for the period of her disability.

Accordingly, the plaintiff's motion for summary judgment will be granted; the

5. The Social Security Act itself states that school attendance does not normally constitute substantial gainful activity. 20 C.F.R. § 404.-1572(c) (1982). The ability to attend school does not automatically negate a finding of disability. *Parish v. Califano,* 642 F.2d 188 (6th Cir.1981).

Secretary's motion for summary judgment will be denied; the Secretary's decision will be vacated; and the case will be remanded for a computation of benefits.