Brenda L. ALEXANDER,
Claimant–Appellant,

v.

Kenneth S. APFEL, Commissioner
of Social Security, Defendant–
Appellee.

No. 00–5710.

United States Court of Appeals,
Sixth Circuit.

Aug. 16, 2001.

Before SILER and GILMAN, Circuit Judges; GIBBONS, District Judge.*

SILER, Circuit Judge.

Claimant, Brenda L. Alexander, appeals the judgment affirming the denial of her application for Social Security disability benefits. The district court affirmed the administrative decision of the Commissioner that Alexander did not meet the requirements for disability under 20 C.F.R. Part 404, Subpt. P, Apx. 1, Listing 12.04. We affirm the judgment of the district court.

## BACKGROUND

Alexander applied for disability benefits in 1995, alleging that she had been severely depressed and disabled from working since January 31, 1991. When Alexander's insured status expired on December 31, 1994, she was thirty-eight years old and attending college. An administrative law judge ("ALJ") held a hearing in 1996 and denied her claim, finding that she had severe depression, but that the illness did not affect her in a way that met the requirements of Listing 12.04(B) during the relevant time period.

Alexander was first diagnosed with depression in June 1992 by Dr. Karen Krigger, a family doctor and her treating physician. Dr. Krigger noted depression in nearly every visit with Alexander after her initial diagnosis, but she did not prescribe medication, refer her to a psychiatrist or therapist, or suggest psychiatric hospitalization before December 31, 1994.

In November 1994, a physician practicing at the same family medicine clinic as Dr. Krigger examined Alexander and noted depression and suicidal ideation that may have been attributable to the fact that Alexander's son was missing at the time.

Alexander was then offered emergency psychiatric treatment, but refused.

Visits to Dr. Krigger in late December 1994 and February 1995 focused upon Alexander's insomnia. In March 1995, she visited Dr. Krigger and expressed regret about her previous homicidal and suicidal ideation. Dr. Krigger sent a letter to the University of Louisville shortly after this visit explaining that Alexander's medical history over the recent months accounted for the change in her academic achievement pattern. The letter noted Alexander's office visits for depression, other mental and physical ailments, and stress related to her delinquent son.

In late 1995, Dr. Krigger referred Alexander for emergency psychiatric services. She was hospitalized for one day. She received therapy and treatment on an outpatient basis after this hospitalization. Alexander was hospitalized again for major depression in June 1996 for one week.

In 1996, Dr. Krigger completed a medical assessment of Alexander's ability to do work-related activities (mental) relating to the period from "6/94–12/94." She indicated that Alexander had a "fair" ability to relate to co-workers, deal with the public, use judgment, interact with supervisors, deal with work stresses, make performance adjustments, maintain personal appearance, and demonstrate reliability. She opined that Alexander had no ability to function independently, maintain attention and concentration, behave in an emotionally stable manner, and relate predictably in social situations. In a 1996 letter, Dr. Krigger also wrote that in the "second half of 1994, Miss Alexander was under significant stress from the hospitalization of her son who had two suicide attempts as well as chemical dependency and bipolar

---

* The Honorable Julia Smith Gibbons, United States District Judge for the Western District of Tennessee, sitting by designation.

diagnoses. She found it very difficult to function at school and perform her activities of daily living."

The ALJ rejected Dr. Krigger's assessment in favor of the opinion of Dr. Richard Edelson, a non-examining psychologist. Dr. Edelson reviewed the medical record and testified that although Alexander had major depression, she did not meet the criteria of Listing 12.04(B), relying partially on "the fact that she was still in school and still making good grades and carrying on her daily life." He testified that her daily activities would be slightly restricted; she would have moderate difficulties maintaining social functioning; she would occasionally experience deficiencies of concentration, persistence and pace; and she had no documented deterioration or decompensation in work or a work-like setting. He opined that Alexander would have a fair or good ability in each area listed in the assessment of her ability to do work-related activities (mental). This conclusion was based upon her attending school with good grades, the absence of medication or hospitalization during treatment by Dr. Krigger, and the fact that she was managing other aspects of her life.

The ALJ agreed with Dr. Edelson's testimony in regard to Alexander's not meeting the requirements of Listing 12.04(A). He also found that Alexander's testimony concerning her symptoms prior to the last insured date was not credible because it did not match Dr. Krigger's treatment notes, and wasn't consistent with her lack of medication or hospitalizations and her ability to attend college. The ALJ concluded that, during the relevant period, Alexander retained the residual functional capacity to perform her past work as a day care worker, temporary receptionist/clerk/typist, and a computer terminal operator. The district court entered judgment affirming the Commissioner's decision.

## STANDARD OF REVIEW

■ [O]n review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence.

\*　\*　\*　\*　\*　\*

■ The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.

*Buxton v. Halter,* 246 F.3d 762, 772–773 (6th Cir.2001) (citations and internal quotation marks omitted).

## DISCUSSION

■ 20 C.F.R. § 404.1520(b)-(f) (1996), provides a five-step process by which disability claims are evaluated. The ALJ evaluated Alexander's claims via this process and his determination is consistent with a finding that she did not meet the requirements of 20 C.F.R. § 404.1520(e) and (f).

Alexander's appeal focuses primarily on the ALJ's reliance on the opinion of Dr. Edelson, because of Dr. Edelson's partial reliance on the fact that she had above average (all A's) performance in college class work during the relevant time period. She criticizes this reliance on two bases: (1) the weight accorded medical opinions and diagnoses of treating physicians; and (2) this court's discussion of the relevance of college attendance with regard to disability found in *Cohen v. Sec. of Health and Human Servs.,* 964 F.2d 524 (6th Cir. 1992).

"In evaluating a claimant's alleged disability, medical opinions and diagnoses of treating physicians are entitled to great weight. However, the ALJ 'is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation.'" *Buxton,* 246 F.3d at 773 (citing and quoting *Cohen,* 964 F.2d at 528 (citing *King v. Heckler,* 742 F.2d 968, 973 (6th Cir.1984))).

Here, the ALJ rejected Dr. Krigger's assessment because: (1) it was not consistent with the record of Alexander's treatment, which showed a marked increase in her depression and its effects during 1995 and 1996, after the last date Alexander was insured; (2) it was conducted two years after the relevant period; and (3) it was not consistent with and did not explain Alexander's ability to perform well in college. Likewise, the ALJ found that Alexander's testimony describing her symptoms lacked credibility because it was inconsistent with the medical history. It is also noteworthy that Dr. Krigger is a family physician while Dr. Edelson is a psychologist.

*Cohen* is distinguishable in several respects. First, Alexander's scholastic performance was *above average.* Cohen did not perform at an above-average level— completing only one calendar year of law school in three calendar years. *Id.* at 531. Second, Alexander's scholastic performance is directly relevant to show whether she met the requirements of Listing 12.04(B) with regard to "activities of daily living"; maintenance of "social functioning"; "deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner"; and "deterioration or decompensation in work or work-like settings." The *Cohen*

court concluded that college attendance on a part-time basis did not amount to substantial evidence by itself, but stated that it was probative of whether the claimant was capable of engaging in substantial gainful activity. *Id.* at 531. The ALJ's decision did not rest on Alexander's college attendance alone. Third, the *Cohen* court also found that "[t]he logic of *Parish [v. Califano,* 642 F.2d 188 (6th Cir.1981)],[1] is particularly apposite here, *in view of the nature of Cohen's illness." Id.* at 530(emphasis added). Cohen suffered from the Epstein–Barr virus and chronic fatigue syndrome, which is "characterized by periods of exacerbation and remission." *Id.* Alexander, on the other hand, suffered from depression.

The ALJ's decision is supported by: (1) the inconsistency of Dr. Krigger's evaluation with the medical evidence, i.e., a lack of "detailed objective criteria and documentation," *Buxton,* 246 F.3d at 773; (2) Dr. Edelson's medical opinion, which alone amounts to substantial evidence because it was consistent with the evidence in the record, *see Atterberry v. Sec. of Health and Human Servs.,* 871 F.2d 567, 570 (6th Cir.1989); (3) the lack of credibility in Alexander's testimony; and (4) the fact that Alexander was able to achieve excellent grades in college during the relevant time. These factors amount to substantial evidence.

AFFIRMED.

---

1. The *Parish* court held that "[a]ttending college on a part-time basis is not the equivalent of being able to engage in substantial gainful activity. Seven or eight classroom hours are a lot less demanding than full-time remunerative work." *Id.* at 191.