Mary Jo ANDERSON, Appellant,

v.

Margaret M. HECKLER, Secretary, Health & Human Services, Appellee.

No. 83–1322.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 14, 1983.

Decided Feb. 14, 1984.

Evan L. Hultman, U.S. Atty., Thomas G. Schrup, Asst. U.S. Atty., N.D. Iowa, Cedar Rapids, Iowa, for appellee; Paul P. Cacioppo, Regional Atty., Region VII, Bruce R. Granger, Deputy Regional Atty., Dept. of Health and Human Services, Kansas City, Mo., of counsel.

Dennis Groenenboom, Legal Services Corp. of Iowa, Cedar Rapids, Iowa, for appellant.

Before LAY, Chief Judge, ROSS and BOWMAN, Circuit Judges.

LAY, Chief Judge.

On May 17, 1978, Mary Jo Anderson (plaintiff) applied for disabled child benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–433 (1976 & Supp. V 1981).[1] Ms. Anderson's application was denied throughout the administrative appeal process. Thereafter, she sought judicial review of the denial. On July 13, 1981, the district court, the Honorable Edward J. McManus presiding, remanded the case to the Social Security Administration for further consideration. On October 23, 1981, a new hearing was provided before an Administrative Law Judge (ALJ). The ALJ recommended denial of benefits; the Social Security Appeal's Council adopted the ALJ's decision. Ms. Anderson again appealed to the district court; the court found that substantial evidence on the record as a whole existed to support the determination to deny benefits. This appeal followed.

Mary Jo Anderson was born on September 16, 1945. Since an undetermined date, Ms. Anderson has suffered from chronic undifferentiated schizophrenia with paranoia. She has always resided at her parents' home and is currently receiving Supplemental Security Income benefits.[2] Ms. Anderson has worked at two jobs relevant to this appeal: as a sales clerk in Armstrong's Department Store in Cedar Rapids, Iowa; and then as a clerk-typist for Iowa Electric Light and Power Company.

To be eligible for disabled child benefits, a claimant must prove that he or she is under a disability that began before age 22 and existed at the time of the claimant's application for benefits. 42 U.S.C. § 402(d)(1)(B)(ii). A claimant is "under a disability" if the claimant is unable to engage in substantial gainful activity by reason of any medically determinable mental or physical impairment that has lasted or can be expected to last for 12 months or more. 42 U.S.C. § 423(d)(1)(A). The disability must be continuous from before age 22 until the claimant's application. *Futernick v. Richardson,* 484 F.2d 647, 648 (6th Cir.1973). Thus, if Ms. Anderson at any time since her 22nd birthday has engaged in substantial gainful activity, she is not disabled within the meaning of the statute and is not entitled to disabled child benefits.[3]

The regulations covering disability benefits provide that if the applicant's "earnings averaged more than $200 a month in calendar years prior to 1976" and "more than $230 a month in calendar year 1976" the Secretary will consider the applicant to have engaged in substantial gainful activity. 20 C.F.R. § 404.1574(b)(2)(i) & (ii) (1982). This presumption may be rebutted by evidence of the nature of the applicant's work, the adequacy of the applicant's performance, and the time the applicant spent in work. 20 C.F.R. § 404.1573 (1982).

The ALJ found that while at Armstrong's, Ms. Anderson earned $705.03 during the two and one half months worked in 1972; $1,838.67 during the seven months worked in 1973; and $2,062.84 during the five months worked in 1974. During Ms. Anderson's employment at Iowa Electric, she earned $3,962.85 in 1975 for eight months of work and $4,826.42 in 1976 for eleven months of work. Both the ALJ and the district court averaged Ms. Anderson's earnings for a given year over the months *worked* in that year. Using this method, Ms. Anderson's earnings at Armstrong's each year exceeded the amounts that create a presumption of substantial gainful activity. Given this presumption and the evidence of Ms. Anderson's satisfactory work

---

1. Ms. Anderson earlier had filed another application that was denied and that has no bearing on this case.

2. Ms. Anderson seeks disabled child benefits because the amount received under those benefits is appreciably greater than that received under Supplemental Income benefits.

3. Because we find that Ms. Anderson engaged in substantial gainful activity, and is ineligible for benefits on this ground, we do not need to address the question of whether or not Ms. Anderson's disability began before the age of 22.

record, the ALJ concluded that Ms. Anderson had engaged in substantial gainful activity during her period of claimed disability. On appeal, Ms. Anderson challenges the ALJ's method of computing her average earnings. Ms. Anderson contends that the total earnings for each year should have been averaged over the full calendar year of 12 months. Using this method, Ms. Anderson's earnings at Armstrong's would not create a presumption of substantial gainful activity.[4]

The Secretary argues that the regulation requires that the applicant's earnings be averaged over only the months worked. We recognize that an agency's interpretation of its own regulation should be followed unless there are compelling indications that it is wrong. *E.I. duPont de Nemours & Co. v. Collins,* 432 U.S. 46, 56, 97 S.Ct. 2229, 2235, 53 L.Ed.2d 100 (1977). There is no available legislative history to guide us in the interpretation of the relevant regulations. However, a careful reading of the regulations leads us to agree with the Secretary's method of computing average earnings.

The applicable regulation provides: "The work that you have done during any period in which you believe you are disabled may show that you are able to do work at the substantial gainful activity level. If you are able to engage in substantial gainful activity, we will find that you are not disabled." 20 C.F.R. § 404.1571 (1982). Under the regulation, a determination that an applicant has in the past engaged in substantial gainful activity does not purport to be a determination that the applicant is now or ever has been capable of *maintaining* this level of financial support. Instead, it is a determination that, for a specific time during the period in which the applicant claims to have been disabled, the applicant was able to engage in substantial gainful activity and thus was not, during that time, *continuously* disabled. Because an applicant is required to show that he or she was continuously disabled, a determination that the applicant engaged in substantial gainful activity defeats the claim for benefits.

A proper reading of the regulation requires that the decision maker average the wages earned by the applicant over the time employed to determine whether during that time the applicant was capable of substantial gainful activity. This method of averaging gives a truer reading of the applicant's capabilities. The plaintiff's method of averaging her wages received during a calendar year over all the months in that year, whether plaintiff was employed during those months or not, circumvents the purpose for determining whether an applicant engaged in substantial gainful activity. A determination of average earnings using the plaintiff's method would not tell us whether an applicant was "capable" of substantial gainful activity but whether the applicant was capable of earning, for that year, a substantial income.[5]

We also note that the regulation is written in terms of "earnings averaged more than $200 a month." If plaintiff were correct in her assertion that an applicant's earnings always should be averaged over a 12 month period, the regulation more logically would be written in terms of a *yearly* minimum, not a *monthly* minimum. *See,*

---

**4.** Using the plaintiff's proposed method of averaging, her earnings at Iowa Electric indicate that she engaged in substantial gainful activity. However, the ALJ found that other factors such as Ms. Anderson's health problems and her absentee record may have rebutted the presumption created by her earnings. Because the ALJ found that Ms. Anderson's work at Armstrong's indicated that she engaged in substantial gainful activity, he did not rely on Ms. Anderson's work at Iowa Electric in his decision to deny benefits. Because we agree with the ALJ's evaluation of Ms. Anderson's work at Armstrong's, we also do not need to evaluate her work at Iowa Electric.

**5.** The court does not wish to imply that the income levels set by the Secretary for presuming the ability to engage in substantial gainful activity are "substantial" in the usual meaning of the term. However, earnings meeting the level of the regulation more equitably are augmented by Supplemental Security Income payments such as plaintiff is now receiving than by disability payments such as plaintiff is seeking.

*e.g.,* 5 C.F.R. § 595.105(b) (1983) ("$7,000 per annum" limit on comparability allowance payable to Government physicians); 20 C.F.R. § 416.1161(c) (1983) (child's earned income excluded up to "$1,620 per year" if child is student); 20 C.F.R. § 676.26–1(c)(2)(i) (1983) (wages for any Public Service Employment participant limited to "$10,000 per year" from CETA funds). Thus, for this court to give meaning to the terms and the method of phrasing used in the regulation, we must agree with the Secretary's interpretation of the proper method for computing average earnings.

We are not indifferent to Ms. Anderson's argument that under our method of determining average income disabled persons might be dissuaded from even attempting to work out of fear of being able to work only long enough to lose their eligibility for disability benefits. However, we point out that the determination that an applicant meets the threshold income level is only one factor in determining whether an applicant was capable of substantial gainful activity. As we have discussed, the decision maker is required to take into account other factors. *See supra* p. 456. Thus, persons who courageously attempt to enter the workforce and who must end their efforts because of their disability need not fear automatic exclusion from receipt of disability benefits. *See, e.g., Chicager v. Califano,* 574 F.2d 161 (3d Cir.1978); *Cornett v. Califano,* 590 F.2d 91 (4th Cir.1978); *Hanes v. Celebrezze,* 337 F.2d 209 (4th Cir.1964).

█ Because we affirm the ALJ's determination that Ms. Anderson's earnings at Armstrong's created a presumption that she engaged in substantial gainful activity, we now must review the conclusion that this presumption was not rebutted by the evidence presented by Ms. Anderson. The plaintiff presented evidence that during her employment at Armstrong's she worked for three relatively short periods (several months each), that she needed to interrupt her employment to obtain medical treat-

ment, and that she took the job against her doctor's advice. Plaintiff alleged that in January of 1973 she was terminated because of her health problems. Plaintiff contends that this evidence combined with the erratic nature of her illness, that is, symptom-free periods followed abruptly by acute phases of the illness, support her assertion that the work she performed at Armstrong's should not be considered substantial gainful activity.

The Secretary presented evidence that Ms. Anderson's supervisors considered her job performance average to above average. They testified that she was able to perform the duties assigned to her and that she did not have to be more closely supervised than any other employee. Ms. Anderson's supervisors also stated that she was terminated in January of 1973 due to lack of work during the non-holiday season and had the termination been for any other reason she would not have been rehired, as she was, in April of the same year. From this evidence, the ALJ and the district court found that Ms. Anderson did not meet her burden of proving that she was disabled continuously from her 22nd birthday until she filed for disabled child benefits.

We also conclude that Ms. Anderson did not meet her burden of proof. Although conflicts in the evidence exist as to plaintiff's ability to perform substantial gainful activity, such conflicts are to be resolved by the administrative decision maker, not the courts. While Ms. Anderson clearly has a serious and debilitating illness, testimony from her supervisors and fellow employees provides adequate evidence to support the conclusion that the work she performed at Armstrong's was both substantial and gainful.[6] We, therefore, agree with the ALJ's determination that Ms. Anderson's employment created a presumption that she was engaged in substantial gainful activity. We also conclude that substantial evidence shows that Ms. Anderson did not rebut this presumption. We, therefore, affirm the

---

6. The regulations define "substantial work activity" as work "that involves doing significant physical or mental activities" and "gainful work activity" as work that is done "for pay or profit." 20 C.F.R. § 404.1572(a) & (b) (1982).

district court in its denial of benefits to Ms. Anderson.