**Beverly F. DINKEL,
Plaintiff–Appellant,**

v.

**SECRETARY OF HEALTH & HUMAN SERVICES, Defendant–Appellee.**

No. 89–1686.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 29, 1990.

Decided Feb. 9, 1990.

J.B. Bieske (argued), Warren, Mich., for plaintiff-appellant.

Donna Morros Weinstein, Chief Counsel, Henry S. Kramzyk (argued), Department of Health and Human Services, Office of Gen. Counsel, Region V, Chicago, Ill., Peter A. Caplan, Asst. U.S. Atty., Office of U.S. Atty., Detroit, Mich., for defendant-appellee.

Before MILBURN and NORRIS, Circuit Judges, and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

Plaintiff-appellant, Beverly F. Dinkel, appeals from the district court order affirming the Secretary of Health and Human

Services' determination that she was employed in substantial gainful activity before she reached the age of 22 and, therefore, was not entitled to child's insurance benefits. For the following reasons, we affirm the judgment of the district court.

## I.

On January 8, 1987, claimant filed an application for child's insurance benefits, alleging that she had been unable to work since birth due to deafness, blindness of the left eye, cerebral palsy, and degenerative arthritis. Claimant is presently receiving supplemental security income benefits due to these impairments. Her application for child's insurance benefits was denied initially and upon reconsideration because it was determined that claimant had been employed in substantial gainful activity before reaching the age of 22.

A hearing before an Administrative Law Judge (ALJ) was held on November 25th, 1987. At the hearing the following evidence was introduced.

Claimant was born on November 23, 1948, and completed the eleventh grade in school. Claimant commenced work on June 27, 1968, before she reached the age of 22 at the United States Post Office as a machine operator. Claimant gained entry into her employment through a joint U.S. Postal Service and Michigan Rehabilitation Services Program, which was implemented to employ otherwise unemployed deaf people. Claimant was employed by the Post Office until July 23, 1971, when she resigned.

Agnes Foret, a friend of claimant and a freelance interpreter for the deaf, testified as a lay witness. She stated that she was familiar with the Post Office program as it originated in the City of Detroit in 1967–1968. At that time Ms. Foret was asked by the Michigan Rehabilitation Services Program to develop training materials to help train the deaf to pass the Federal Civil Service exam. She trained about 100 deaf people to take the exam and after they were taken into the Post Office, she was involved in job orientation and was called back several times to help with difficulties

with deaf employees, but was never an employee of the Post Office herself. Ms. Foret stated that there was a person in the Post Office with sign knowledge who was able to work with the deaf people. When asked by the ALJ if any accommodations for the deaf were made other than providing an interpreter, Ms. Foret stated that she thought special counseling and encouragement was also given. The ALJ replied, "Well, of course, we don't know that because we don't have the testimony of anybody at the Post Office. You weren't on the premises. You did not observe that, did you?" Ms. Foret replied, "No."

When asked if to her knowledge concessions were made, Ms. Foret answered that the Post Office was more lenient in allowing the deaf to continue on the job even though "they didn't know the schemes, and the ... time element on the LSM machine." When asked if there were deaf people who were working in the Post Office today, Ms. Foret stated that there were and as far as she knew they were performing their jobs in an acceptable manner.

Claimant, who was represented by counsel, testified through an interpreter that she tended two machines, one of them a LSM machine, at the Postal Service. Asked whether she was treated differently than other employees, claimant stated: "Yes, they wanted me to keep training and keep training, but I was not successful. But I kept on training anyway." Claimant indicated that she failed tests at one of the machines four to six times, "[b]ut I kept on working in that job." Asked whether she received different supervision than the other employees, claimant stated: "Yes. The supervisor that I had went and got another supervisor who could sign, and she was like a parent. She gave me a lot of help." Asked how often this extra supervision was given, claimant stated: "From time to time.... Often, probably every week."

In response to a questionnaire sent by the Social Security Administration to the Postal Service on February 27, 1987, a United States Postal Service personnel assistant indicated that claimant was employed from June 27, 1968 to July 23, 1971,

when she resigned. A question asking whether special working conditions were provided was answered "N/A."

Christian R. Barrett, a licensed vocational and clinical psychologist, testified as a vocational expert. When asked if in his opinion claimant's employment at the Post Office constituted substantial gainful activity, Mr. Barrett stated:

Well, does remain the question whether an individual without a handicap could function and perform at the degree of skill accuracy that Ms. Dinkel did and still maintain the employment. I guess what ... I've heard in this hearing today is that allowances and leniencies were provided, you know, for her that would not be given to an individual without a handicapping condition of her type. By that, if we assume that, then it would be more of a sheltered experience.

If we assume the Post Office typically would make allowances, decrease their expectations, increase their amount of time for training and retraining, for anyone that they thought was a potential good employee which I really don't believe they do, then it would be a substantial gainful activity.

At the conclusion of the hearing, the ALJ stated that the issue was whether claimant, when she was working for the Post Office, was working in a sheltered workshop or in a competitive environment and that it was necessary for somebody from the Post Office to testify.

Claimant's attorney replied that he was having difficulty in getting someone from the Post Office to appear. Claimant's attorney stated that over the telephone he had been told by a postal employee that deaf people were employed on the LCM machines because the machines made too much noise for regular employees. Claimant's attorney felt that the Post Office would be reluctant to testify about this. The ALJ told claimant's attorney that he had subpoena powers and would be willing to sign a subpoena.

After the hearing, claimant supplemented the record with three letters. In a letter written January 21, 1988, Joyce Keener, an Employment Service Analyst employed by the Michigan Rehabilitation Services, stated that between 1967–1968 Michigan Rehabilitation Services and the United States Postal Service "had a pilot program to employ the deaf and hearing impaired on a non-competitive basis through a selected placement process." Ms. Keener stated that claimant may have been one of those individuals if her dates of employment were correct.

A second letter from Ms. Keener, dated March 18, 1988, briefly described the mechanics of the pilot program. Entry into the program required certification by Michigan Rehabilitation Services that the person was severely vocationally handicapped. Program participants did not have to compete on a competitive basis by taking the written portion of the Federal Civil Service examination. The letter further stated:

The program was modified to assist the special needs of the hearing-impaired/deaf participants by allowing extra time to complete or learn task [sic] due to lack of communication skills. Special Interpreters, work area and supervisors with sign language were provided to closely monitor and to train the participants. Counseling staff from Michigan Rehabilitation Services were brought in to deal with special needs and problems to assist in understanding the work environment and work rules.

The letter stated that continued eligibility in the trial program required participants to meet standards within a given period of time and that some participants were terminated for failure to meet the standards.

Claimant was not terminated because she failed to meet standards but because she chose to resign. The ALJ concluded that claimant's employment at the Post Office constituted substantial gainful activity before the age of 22 and denied child's insurance benefits on this basis in a decision rendered on April 7, 1988.

Claimant requested review and submitted a letter to the Appeals Council which was written by Lawrence Wright, who was placement coordinator of the Wayne area of Michigan Rehabilitation Ser-

vices in 1966 and the person who had developed the Post Office program for the employment of the deaf. His letter stated:

We also got the Post Office to promote a person to the position of lead supervisor of this new deaf crew—a person who used sign language. Support was provided to all the trainees through registered interpreters for the deaf, and also with follow-up efforts by Michigan Rehabilitation Service counselors and with me. Many support services were provided to several of the deaf clients to ensure their success on the job.

Mr. Wright stated that there were many problems in getting the program off the ground and gaining acceptance by the Post Office. The Post Office had strict standards for their letter-sorting machine operators, and the program was an attempt to get deaf persons to function at that standard. The letter stated that Mr. Wright would answer further questions and that if Ms. Dinkel's file were needed, it might still be available in the records center.

On August 24, 1988, the Appeals Council denied claimant's request for review, affirming the ALJ's decision to deny benefits. This determination became the final decision of the Secretary. Claimant appealed to the district court pursuant to 42 U.S.C. § 405(g). The district court referred the case to a United States Magistrate, who on May 1, 1989, recommended that the Secretary's denial of benefits be affirmed. The district court accepted the magistrate's report and recommendation and denied benefits on May 31, 1989. Claimant timely filed this appeal.

## II.

This court has jurisdiction on appeal to review the Secretary's final decision pursuant to 42 U.S.C. § 405(g) which specifies that the Secretary's factual findings are conclusive if supported by substantial evidence. " 'Substantial evidence' means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir.

1981) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)), *cert. denied*, 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983).

In order to qualify for receipt of child's insurance benefits based on the income of a parent wage earner, the claimant must (1) file an application for child's benefits, (2) at the time of filing, be unmarried and (3) be under age 18, be 18 years or older and have a disability that began before age 22 years old, or be 18 years or older and qualify for benefits as a full time student. 20 C.F.R. § 404.350. The regulations governing child's insurance benefits are set forth at 20 C.F.R. Pt. 404, Subpt. D, and incorporate the regulations at 20 C.F.R. Pt. 404, Subpt. P for purposes of determining disability. 20 C.F.R. § 404.302. If a claimant was working and engaging in substantial gainful activity before the age of 22, claimant will not be found to be eligible for child's insurance benefits regardless of medical findings. 20 C.F.R. § 404.1520(b).

The ALJ found that prior to attaining the age of 22, claimant had a severe impairment because of loss of hearing, cerebral palsy, blindness in one eye, and degenerative arthritis. However, because claimant was working at the Post Office prior to attaining age 22 and shortly thereafter, earning between $448 and $600 per month, she was engaged in substantial gainful activity and therefore not disabled. The regulations presume that a person was engaged in substantial gainful activity if, for years prior to 1976, earnings averaged more than $200 per month. 20 C.F.R. § 404.1574(b)(2)(i).

Claimant alleges that this presumption does not apply to her, relying on 20 C.F.R. § 404.1574(a)(2), (3) which states:

(2) *We consider only the amounts you earn.* We do not consider any income not directly related to your productivity when we decide whether you have done substantial gainful activity. If your earnings are being subsidized, the amount of the subsidy is not counted when we determine whether or not your work is substantial gainful activity. Thus, where work is done under special

conditions, we only consider the part of your pay which you actually "earn". *For example, where a handicapped person does simple tasks under close and continuous supervision, we would not determine that the person worked at the substantial gainful activity level only on the basis of the amount of pay.* An employer may set a specific amount as a subsidy after figuring the reasonable value of the employee's services. If your work is subsidized and your employer does not set the amount of the subsidy or does not adequately explain how the subsidy was figured, we will investigate to see how much your work is worth. (3) *If you are working in a sheltered or special environment. If you are working in a sheltered workshop, you may or may not be earning the amounts you are being paid.* The fact that the sheltered workshop or similar facility is operating at a loss or is receiving some charitable contributions or governmental aid does not establish that you are not earning all you are being paid. Since persons in military service being treated for severe impairments usually continue to receive full pay, we evaluate work activity in a therapy program or while on limited duty by comparing it with similar work in the civilian work force or on the basis of reasonable worth of the work, rather than on the actual amount of the earnings.

(emphasis added). Claimant argues that she was a handicapped person, doing simple tasks under close and continuous supervision in what was, in effect, a sheltered workshop subsidized by the government for the employment of deaf persons. It was therefore improper to deny her benefits on the basis of her earnings.

We agree with claimant that the presumption of substantial gainful activity based upon her earnings of $448–$600 per month can be rebutted by evidence of the nature of the applicant's work, the conditions of employment and the adequacy of the applicant's performance. 20 C.F.R. § 404.1573. However, in the present case we find that claimant has failed to rebut the presumption. The testimony of Ms.

Foret does not provide substantial evidence because she was not an employee of the Post Office. The letters from Ms. Keener and Mr. Wright are inconclusive. Although Mr. Wright's letter stated that claimant's records may still be on file and that he was willing to answer further questions, claimant made no attempt to supplement these letters with truly probative evidence that her employment at the Post Office did not constitute substantial gainful activity.

We conclude that claimant has failed to meet her burden of proof. *Anderson v. Heckler,* 726 F.2d 455, 458 (8th Cir.1984) (presumption was not rebutted by claimant's testimony that she worked under special conditions, when this testimony was not substantiated by testimony of her employers). We agree with the ALJ's determination that Ms. Dinkel's employment at over $200 per month prior to 1976 created a presumption that she was engaged in substantial gainful activity. We conclude that substantial evidence shows that claimant did not rebut this presumption. We, thus, affirm the district court in the denial of benefits.