**James D. MILLER, Plaintiff,**

v.

**Donna E. SHALALA, Secretary of Health and Human Services, Defendant.**

No. C2–93–556.

United States District Court,
S.D. Ohio,
Eastern Division.

April 20, 1994.

James Adams Cervay, E.S. Gallon & Assoc., Dayton, OH, for plaintiff.

Joseph E. Kane, U.S. Attorney's Office, Columbus, OH, for defendant.

## OPINION AND ORDER

HOLSCHUH, Chief Judge.

Plaintiff, James D. Miller, filed this action seeking review of a final decision of the Secretary of Health and Human Services ("Secretary") denying his application for child's insurance benefits. That application, which was filed on August 2, 1990, was based upon Miller's developmental disability, which allegedly occurred while he was the dependent child of an insured wage earner, Donald I. Miller.

After initial administrative denials of his claim, plaintiff was afforded a hearing before an Administrative Law Judge on January 9, 1992. In a decision dated April 6, 1992, the Administrative Law Judge denied benefits. That decision became the final decision of the Secretary when the Appeals Council denied review on April 8, 1993.

Plaintiff thereafter timely commenced this civil action. The record of administrative proceedings was filed in this Court on August 4, 1993. Plaintiff moved for summary judgment on September 8, 1993 and the Secretary responded on November 8, 1993. The Secretary also submitted additional authority in support of her position on November 10, 1993, and plaintiff responded with his own supplemental memorandum on November 23, 1993. No further briefs have been filed, and the matter is now ripe for decision.

Plaintiff was born on November 14, 1959, and is now 34 years old. The parties do not disagree that he is currently disabled. In fact, an application for social security disability benefits based upon his own earnings record was granted in a decision issued by an Administrative Law Judge on October 31, 1990. In that decision, the Administrative Law Judge concluded that plaintiff suffered from a severe developmental disorder with borderline intellectual functioning, and that this disorder caused marked impairment of his attention and concentration and his ability to process new information. Because of those impairments, the Administrative Law Judge did not believe that plaintiff could be expected to maintain adequate attention and concentration or demonstrate sufficient independence and reliability to perform even low stress, simple repetitive duties in unskilled entry level work in a competitive setting. The decision fixed the onset date of this disability as March 18, 1988. (Tr. 116–120). Thus, the issue here is not whether plaintiff is disabled, but whether he qualifies for child's disability benefits as well.

Child's disability benefits are provided for in 42 U.S.C. § 402(d)(1)(B)(ii). One of the requirements for benefits under that section is that the claimant be "under a disability ... which began before he attained the age of 22. ... " Thus, the focus of the inquiry in this case was whether plaintiff's existing disability began before he turned 22. The Court will discuss below the divergence in the parties' legal theories as to what, in addition to a disability commencing before age 22, must be shown in order for the plaintiff to qualify for benefits. The Court now turns to the administrative record to review the facts upon which plaintiff's claim is based.

At the administrative hearing, plaintiff testified that he completed the twelfth grade, although he was in special education classes. (Tr. 32). He testified to very limited reading and writing skills, and stated that his sister handles most of his financial transactions. (Tr. 32–33).

Plaintiff has a fairly extensive work history. While in high school, and as part of the special education program, he worked as a bagger at a grocery store. (Tr. 33–34). After graduation, he worked in the maintenance and janitorial areas at Goodwill Industries. (Tr. 34–35). Through that organization, he then obtained a janitorial and maintenance job at a drug store, which he held for six months. (Tr. 35). He then went to a job training workshop and, after a period of training, obtained employment at a Ponderosa Steakhouse. He was a dishwasher, breakfast cook, and janitor. (Tr. 36). He held that job for several years, but was eventually fired because he was late for work as a result

of being arrested for possession of marijuana. (Tr. 36–38).

Plaintiff has not held steady employment since leaving Ponderosa. He did work for a period of time as a laborer with a company that bags potting soil, and then worked at several fast food restaurants because his sister-in-law was also working there. He did light maintenance and some cooking at those restaurants. He quit the second job, however, after "getting into it" with his sister-in-law. (Tr. 38–39). Between the two fast food restaurant jobs, he also was a dishwasher and silver polisher with a catering service. (Tr. 39–40). His employment with Ponderosa ended in 1986, and he earned less than $2,000 in 1987 and 1988. It does not appear that he has had any earnings from 1989 to the present. (Tr. 86–91).

Plaintiff's sister, Shirley Heide, also testified at the administrative hearing. She confirmed that plaintiff has experienced problems with reading, writing, and remembering directions since he was a child. She also confirmed that she handles his checking account, and testified that she must remind him of various things to do, including his personal hygiene. (Tr. 54–55). She testified that she attempts to let him live as independently as possible. At the present time, he lives in a cabin on property belonging to his grandparents, takes many of his meals with his grandparents, and does various things to assist them.

Pertinent medical records reveal the following. Plaintiff was seen by Dr. Arnold, a clinical psychologist, on June 25, 1990. Dr. Arnold described plaintiff's past diagnosis as borderline intellectual ability, developmental disorder (not specified) and personality disorder (antisocial type). Dr. Arnold reviewed a number of records which indicated that plaintiff has suffered from borderline intellectual functioning from early childhood. His full scale IQ at age six was 79. Plaintiff exhibited a speech impediment but his speech was intelligible. He had some difficulty on cognitive functioning tests.

When examined, plaintiff's full scale IQ was still 79. A neuro-psychological examination revealed generalized intellectual dysfunction. Dr. Arnold believed that it was likely that plaintiff had difficulty listening to instructions and obtaining information from verbal presentation. His motor skills were bilaterally slow, and his short term memory for immediately presented information was significantly impaired. Dr. Arnold believed that plaintiff processed information insufficiently due to poor concentration and lack of attention to details, and that he did not have good problem solving skills. Dr. Arnold also concluded that it was likely that plaintiff's short term memory deficit was a "chronic aspect of his overall development." He diagnosed plaintiff as suffering from borderline intellectual functioning and a mixed type developmental disorder manifested by impairment in reading, writing, and arithmetic skills. He also believed that plaintiff had a narcissistic type personality disorder with dependent features, and that he had serious impairments in his social and occupational functioning. He did not believe that plaintiff could, either at the time of the examination or any time in the future, perform any substantial gainful activity. (Tr. 149–54).

Shortly after his initial report, Dr. Arnold wrote a second report addressing a question posed by plaintiff's attorney concerning plaintiff's past ability to work. Dr. Arnold expressed the opinion that, based upon the continual presence of borderline intellectual functioning, plaintiff's condition was substantially the same on his twenty-second birthday as it was on the date of his interview eight years later. (Tr. 144–45).

In addition to Dr. Arnold, several other treating professionals interviewed plaintiff and submitted reports. Dr. Caston, a certified rehabilitation counselor, issued a work evaluation on January 10, 1989. He noted that plaintiff had never been able to obtain any jobs without help from others, and believed that plaintiff's work was "somewhat sheltered or protected in nature." (Tr. 164). The only specific assistance he identified, however, was help in getting a job and getting back and forth to work. He believed that plaintiff had poor judgment, had no vocational skills other than the ability to do manual work, and that he was not employable. (Tr. 162–65).

Plaintiff was also seen by Dr. Flexman, a neuropsychologist, who reported on May 20, 1988 that plaintiff suffered from borderline intellectual functioning and that test results showed mild retardation. He believed that plaintiff would have difficulty handling his own financial affairs. Plaintiff had a fair ability to understand and remember simple one or two-step job instructions on a consistent basis and had a diminished ability to get along with fellow workers and supervisors. He had only a poor ability to deal with the public, but did have a fair ability to sustain attention and concentration on gross motor-types of activities and tasks. Because Dr. Flexman's examination was not performed in connection with the current application for child's disability benefits, he did not express an opinion as to whether these matters existed continuously from before plaintiff's twenty-second birthday. (Tr. 225–29).

Based upon the above evidence, the Secretary concluded that plaintiff suffered from impairments best described as borderline intellectual functioning and a developmental disorder. The Secretary believed that the appropriate test for child's disability benefits was whether the claimant suffered from a disability which (1) began before his twenty-second birthday, and (2) rendered him *continuously* disabled from that date to the date of his application. Applying that test, the Secretary noted that plaintiff engaged in employment from 1984 through 1986 at the Ponderosa Steakhouse, from which he earned more than $300 per month. Such earnings raised a rebuttable presumption that plaintiff had engaged in substantial gainful activity during those years and that his disability was therefore not continuous. The Secretary further concluded that plaintiff, through this employment, demonstrated his ability to maintain regular employment without assistance from others, and noted that plaintiff was not discharged from his job for poor performance but because of his lateness due to his arrest for drug possession. The Secretary also noted a report from the developmental workshop showing that plaintiff was capable of selective competitive employment. Based upon all these conclusions, the Secretary found that plaintiff had not been under a continuous disability since before his twenty-second birthday, and he was therefore not entitled to child's disability insurance benefits even though he is currently disabled.

In his motion for summary judgment, plaintiff raises two arguments. First, he asserts that the Secretary incorrectly applied a "continuous disability" test. He asserts that his application should have been granted based upon the fact that his impairments arose prior to his twenty-second birthday, that he was under a disability at that time, and that he is now disabled from the same set of impairments. Alternatively, he argues that the Secretary's finding that he was not disabled from at least 1984 through 1986 is not supported by substantial evidence because the work he performed at Ponderosa was not truly competitive and gainful employment. These arguments require the Court to determine, first, the appropriate legal test to be applied to a child's disability benefit case, and, second, to review the Secretary's findings under the "substantial evidence" standard.

■ The Court begins with the question of what a child must show in order to be entitled to benefits under 42 U.S.C. § 402(d). The Court of Appeals clearly answered this question in *Futernick v. Richardson*, 484 F.2d 647 (6th Cir.1973) (per curiam) by holding that two showings must be made: (1) that the claimant was disabled on or before the applicant's birthday (here, the twenty-second birthday); and (2) that such disability continues to the date of the application. This "continuous disability" interpretation of the statute appears to be a long-standing policy of the Secretary, and it has been accepted as an appropriate interpretation by numerous courts of appeal. *See, e.g., Suarez v. Secretary of HHS*, 755 F.2d 1, 3 (1st Cir.), *cert. denied*, 474 U.S. 844, 106 S.Ct. 133, 88 L.Ed.2d 109 (1985) and cases cited therein (including decisions from the District of Columbia and Seventh Circuits, as well as *Futernick,* supra); *see also Kidda v. Director, Office of Workers' Compensation Programs*, 769 F.2d 165 (3d Cir.1985), *cert. denied*, 475 U.S. 1096, 106 S.Ct. 1494, 89 L.Ed.2d 896 (1986). This Court need not concern itself with decisions from other Courts of Appeals, however, in light of the clear holding in

*Futernick,* which is, of course, binding on this Court.

Plaintiff suggests, however, that *Futernick* is not really the law of this circuit. Pointing to later decisions which, plaintiff contends, cannot be reconciled with *Futernick,* he argues that this Court must choose among conflicting precedents, and should reach a result in keeping with the liberal construction to be applied to the Social Security Act. Having reviewed the other decisions which plaintiff claims to be in conflict with *Futernick,* the Court concludes that this argument is without merit.

Plaintiff contends that *Parish v. Califano,* 642 F.2d 188 (6th Cir.1981) lays out a broad exception to the *Futernick* rule and leaves the Court in a position of having little guidance to determine whether the *Futernick* rule or the *Parish* exception applies. Interestingly, *Parish,* begins by citing *Futernick* with approval. However, the Court concluded that the claimant's disability was continuous, as *Futernick* requires, because the work which the claimant had done after her twenty-second birthday was not substantial gainful activity. The Court noted that the claimant had never been employed in a competitive setting and that her work history consisted of 32 weeks of sporadic work spread out over an eight-year period. Essentially, the Court concluded that even plaintiff's lengthiest effort at employment, which came after her twenty-second birthday, was the equivalent of a "trial work period." Noting that an unsuccessful attempt to work made after an application for benefits is filed does not disqualify the applicant for benefits, the Court applied the same test to the claimant's pre-application efforts, and found they did not constitute substantial gainful activity. *Parish* was also unusual in that it involved a claimant with multiple sclerosis, which is a disorder with periods of remission. The Court concluded that the Secretary had not adequately taken into account the fact that most of the claimant's work activity occurred while her disease was in remission. Clearly, because *Parish* applied the continuous disability rule, it is not inconsistent with *Futernick.*

■ In keeping with *Parish,* many courts have consistently recognized that even a plaintiff who engages in what otherwise appears to be substantial gainful activity can, by presenting appropriate facts, demonstrate that his or her disability has been continuous. *See, e.g., Dinkel v. Secretary of HHS,* 910 F.2d 315 (6th Cir.1990); *Ziskin v. Weinberger,* 379 F.Supp. 124 (S.D.Ohio 1973). Thus, the inquiry in this case may be collapsed into a single question: despite the fact that plaintiff earned in excess of $300 per month for several years, which creates a rebuttable presumption that he was engaged in substantial gainful activity, was plaintiff nonetheless continuously disabled since before his twenty-second birthday? Because the Secretary concluded that he was, the Court must determine whether that conclusion is supported by substantial evidence.

■ *Standard of Review.* Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Company v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). It is "'more than a mere scintilla.'" *Id. LeMaster v. Weinberger,* 533 F.2d 337, 339 (6th Cir.1976). The Secretary's findings of fact must be based upon the record as a whole. *Harris v. Heckler,* 756 F.2d 431, 435 (6th Cir.1985); *Houston v. Secretary,* 736 F.2d 365, 366 (6th Cir. 1984); *Fraley v. Secretary,* 733 F.2d 437, 439–440 (6th Cir.1984). In determining whether the Secretary's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" *Beavers v. Secretary of Health, Education and Welfare,* 577 F.2d 383, 387 (6th Cir.1978) (quoting *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 465, 95 L.Ed. 456 (1951)); *Wages v. Secretary of Health and Human Services,* 755 F.2d 495, 497 (6th Cir. 1985). Even if this Court would reach contrary conclusions of fact, the Secretary's decision must be affirmed so long as his deter-

mination is supported by substantial evidence. *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir.1983).

Certainly, there was evidence in the record from which the Secretary could have concluded that plaintiff's disability began before his twenty-second birthday and continued to the date of his application. Dr. Arnold's reports support this conclusion. On the other hand, plaintiff's earnings created a rebuttable presumption that he was engaged in substantial gainful activity from 1984 through 1986. The question then becomes whether the evidence he offered to rebut this presumption was sufficiently compelling that the Secretary was required to accept it.

Here, the best that can be said about plaintiff's evidence that his employment at Ponderosa was the functional equivalent of a sheltered workshop is that it was vague and inconclusive. He testified to performing substantial duties, including janitorial work and being a breakfast cook. Neither he nor anyone else testified that he did not perform that work at a competitive pace, that he was able to maintain his employment only because of special accommodations made for his handicap, or that he required an unusual amount of supervision or guidance in order to do his work. Although it appears that plaintiff needs assistance in obtaining employment, the Secretary correctly concluded that there is little, if any, probative evidence that he needed assistance to maintain that employment. Further, he ultimately lost that job not because of any difficulty in functioning in that setting, but due to external causes.

This situation can be fruitfully contrasted with the facts in *Parish* and *Ziskin.* As noted, in *Parish,* the plaintiff suffered from multiple sclerosis, was never employed in a competitive setting, and was never employed for any length of time. In *Ziskin,* the plaintiff, although employed for a short time as a teacher, had a "woeful record of inadequacy" and exhibited "tremendous difficulty" in holding that job. *Ziskin,* 379 F.Supp. at 127. She was never able to be a self-sustaining or capable employee. The facts of this case much more closely resemble those presented in *Futernick,* where the plaintiff engaged in continuous employment for 16 months, or in *Dinkel,* where the plaintiff presented no truly probative evidence that the work activity involved was neither substantial nor gainful.

Simply put, it is a factual question as to whether this plaintiff's work activity at Ponderosa was substantial, gainful employment. On this record, a reasonable person could conclude that it was. Nothing more is needed to sustain the Secretary's decision that plaintiff was not under a continuous disability from before his twenty-second birthday to the date of his application. Under *Futernick,* that conclusion requires that the application be denied.

Based upon the foregoing, it is ordered that:

1. The Plaintiff's motion for summary judgment is DENIED:
2. The Defendant's motion for summary judgment is GRANTED;
3. The Clerk shall enter judgment in favor of the Defendant.