Patricia PARISH, Plaintiff-Appellant,

v.

Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare, Defendant-Appellee.

No. 79–1364.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 17, 1980.

Decided Feb. 25, 1981.

Charles Trickey, III, Maceroni, Maceroni & Trickey, Warren, Mich., for plaintiff-appellant.

James K. Robinson, U. S. Atty., L. Michael Wicks, Asst. U. S. Atty., Detroit, Mich., for defendant-appellee.

Before WEICK, KEITH and KENNEDY, Circuit Judges.

CORNELIA G. KENNEDY, Circuit Judge.

This appeal requires that we decide whether nine months of employment during a period of remission from multiple sclerosis which occurred subsequent to her 22nd birthday bars a young person from receiving child's insurance disability benefits.

Plaintiff-appellant Patricia Parish contends that she is entitled to receive child's insurance disability benefits under a provision of the Social Security Act, which entitles the child of a wage earner, who died fully insured, to draw benefits based on the earnings record of that parent, beginning from the time that the application for benefits is filed, if the child (1) was dependent on that parent at the time of the parent's death, (2) was unmarried at the time of applying for the benefits, and (3) "is under a disability (as defined in Section

423(d) of this Title) which began before [she] attained the age of 22." 42 U.S.C. § 402(d)(1). To establish disability, the claimant is required by 42 U.S.C. § 423(d)(1)(A) to prove that she (1) suffers from a medically determinable physical or mental impairment which (2) prevents her from engaging in any substantial gainful activity. *Stark v. Weinberger*, 497 F.2d 1092, 1096 (7th Cir. 1974). To qualify for child disability benefits, claimant is also required to prove that she satisfied both these criteria of eligibility prior to her 22nd birthday, which in Miss Parish's case was October 19, 1973. Furthermore, the claimed disability must continue until the time of application for benefits, 42 U.S.C. § 402(d)(1)(G). *Futernick v. Richardson*, 484 F.2d 647 (6th Cir. 1973), here, February 2, 1977.

Both parties agree, and the undisputed evidence indicates that Miss Parish is now and was at the time of the administrative hearing in January of 1975 permanently and totally disabled from multiple sclerosis. The evidence further compels a finding that she has been disabled and unable to engage in substantial gainful activity since August of 1975. The questions raised by this appeal, however, are whether plaintiff has satisfied the third requirement of eligibility and whether her disability existed before she was 22 and continued from the date of her 22nd birthday until she made application for benefits.

The Administrative Law Judge held that while Miss Parish had neurological difficulties prior to her 22nd birthday she had the functional capacity to engage in substantial gainful activity of a sedentary nature and was therefore not under a disability as defined in the Social Security Act before she attained age 22. Specifically, the ALJ pointed to his finding that plaintiff attended college before and after her 22nd birthday, earning some 40–50 credits. And, furthermore, that she was employed as a case worker at a drug counseling center connected with the college from January 1975 until September 1975. The ALJ's decision became final when upheld by the Ap-

peals Council. Miss Parish brought this action to review the denial of benefits under section 205(g) of the Social Security Act, 42 U.S.C. § 405(g). The case proceeded in the District Court on cross motions for summary judgment. The motion of the Secretary was granted affirming the agency's action. This appeal followed. In reviewing the ALJ's decision the question for this Court is whether the decision is supported by substantial evidence. 42 U.S.C. § 405(g). *Henry v. Gardner*, 381 F.2d 191 (6th Cir. 1967). For the reasons which follow we hold that it is not, and, accordingly, reverse.

The evidence before the ALJ consisted of Miss Parish's live testimony, in addition to documentary medical and other evidence. Patricia Parish was born October 19, 1951 and graduated from high school in June 1969. In that month, she suffered a water skiing accident. A local physician prescribed pills and the symptoms, attacks of numbness in the left arm lasting for a maximum of 10 minutes, disappeared within 3 weeks. Subsequently, Miss Parish held two temporary jobs, each lasting approximately three months. In the Fall of 1970, she enrolled in and completed her first semester at Eastern Michigan University. In April 1971, during her second semester at Eastern she had an automobile accident. X-rays indicated a fracture of the sixth cervical vertebra. Plaintiff remained in the hospital for approximately four days, at which time it was discerned that the fracture was probably an old one, possibly dating from the earlier water skiing accident. In May she experienced the first symptoms of multiple sclerosis: buckling of the right ankle, increasing difficulty walking, and frequent bladder infections. She continued to experience these symptoms in addition to balance problems and tingling in her hands, legs and arms, on into the summer.

Plaintiff returned to Eastern in the Fall of 1971 but was unable to complete the semester because of continuing difficulty walking. At the hearing she testified that she had difficulty writing which impaired her ability to take notes, and experienced

frequent fatigue. Dr. Wechsler, a neurologist, admitted her to St. Joseph Mercy Hospital in Pontiac, Michigan where she remained from September 9 through 25. Treatment consisted of intensified injections and physical therapy. A myelogram and an EEG were performed. The documentary medical evidence relevant to this period consists of Dr. Wechsler's progress notes and history, and a hospital report apparently completed by Dr. Ahmad. Dr. Wechsler notes that his examination of Patricia revealed the "presence of a mild hemiparesis with mild incoordination of right arm and right leg. Reflexes are brisker throughout on the right and the right plantar is abnormal." Both reports state that plaintiff describes her right leg as "wooden," has difficulty in walking and maintaining balance and often stumbles although she has never fallen down. She also has difficulty "controlling her hand" when writing which is a problem when taking notes. On bending her neck forward for short durations, she has pain in the form of pins and needles in her fingertips which slowly progresses upwards, resulting in a feeling of numbness in both arms. Dr. Wechsler concluded that the final diagnosis was multiple sclerosis with cervical cord lesions. Dr. Ahmad's report describes plaintiff's gait as "wide based, slightly ataxic with tendency to fall on the left. No foot drop noticed.... Vibration is markedly impaired in the right leg, below knee.... There is appreciable muscular weakness in both upper extremities, no weakness is detected in lower extremities."

In his October 7, 1971 letter to Dr. Deutsch, plaintiff's general physician, Dr. Wechsler stated that "the patient has noticed a slight slurring of speech and slight loss of balance ...." The diagnosis of multiple sclerosis is again made.

Miss Parish's testimony regarding the 1972 Winter semester is somewhat unclear. At one point she indicates that she did not re-enroll at Eastern, while later she states that although she re-enrolled she was unable to complete the semester because of her continued difficulty writing and taking notes. Walking and fatigue continued to be problems. In either event she was not able to complete the semester.

Dr. Chandler, a neurologist, also examined Patricia Parish. His June 6, 1972 report indicates spasticity of the right upper and lower limbs, and of the lower limbs. The report further states that plaintiff walks with a spastic gait. Diagnosis is probable multiple sclerosis.

On July 2, 1972, Miss Parish consulted Dr. Ronald Bennett, a neurologist, for a second opinion as to the previous diagnosis of multiple sclerosis. Dr. Bennett admitted her to Mt. Sinai Hospital from July 20 through August 26, 1972. His impression was "spastic right hemiparesis, probably secondary to cervical cord compression as a result of injury in 1969." On August 7, Dr. Harvey Gass, a neurosurgeon, performed a bilateral cervical laminectomy at C–5 & C–6, in addition to an exploration of the spinal cord for a tumor. At that point he believed that a spinal tumor might be causing plaintiff's neurological difficulties. Miss Parish received physiotherapy which "improved her gait into slight limping." Following the surgery, Dr. Gass indicated in his September 28, 1972 follow-up letter to Dr. Deutsch, that:

> Although she has a little limp in her gait it is minimal and much less than it used to be. . . . Her hand on the right has returned to normal as far as she is concerned, both as far as motor power and sensation is concerned, and even her handwriting has got back to normal. The right lower limb from the hip down doesn't feel quite the same as the left, but it is no cause of trouble to her. Occasionally there is a little tingling in the dorsum of the foot on the right. Initially the altered feeling on the right side involved her buttock also, but it doesn't any more.

Dr. Gass attributed plaintiff's improvement solely to the surgical decompression.

Miss Parish testified that she was unable to return to school in the Fall of 1972 because she was recuperating from the August surgery.

The record is again confusing as to plaintiff's activities during the Winter and

Spring of 1973. Initially she testified that she enrolled in Oakland County Community College but was unable to continue because of reoccurring difficulties with walking and note-taking. When later asked if she was able to finish the second semester of the 1972–1973 term, her reply was yes.

The record is silent as to Miss Parish's specific activities from the Summer of 1973 through the Summer of 1974. We do know, however, that plaintiff did not work during this period since she testified that the last time she had a full-time job prior to January 1975, was May 1970. Moreover, the chronological work history report contained in the record indicates no job or work experience between August 1970 and January 1975. We can also infer that if Miss Parish were enrolled in school during this period she was not carrying a full course load since she testified that, as suggested by her school advisor, she never took a full school schedule after 1971 because of her physical condition. She also testified that from 1971 to 1973 she continued to experience problems of being unable to write, unable to ambulate properly and being easily fatigued.

Plaintiff again attempted college in the Fall of 1974, this time at Oakland University. Although the record is not entirely clear, it appears that she completed the Fall 1974 and Winter and Summer semesters of 1975. During this period, specifically from January until August 1975, Patricia Parish worked as a case worker. This work was finally interrupted by her August 23 to August 30 hospitalization. The final diagnosis was acute exacerbation of multiple sclerosis.

Apparently the ALJ relied heavily on the fact that plaintiff attended college as the basis for his finding that she was not disabled within the meaning of the statute prior to celebrating her 22nd birthday. He failed, however, to take into account the restrictions, limitations and intermissions in her college attendance.

According to her testimony plaintiff was only able to attend college full time for the 1970–71 academic year. It was in the second semester of that year that she first experienced the symptoms of multiple sclerosis. Several months later, in September 1971, multiple sclerosis was diagnosed. Although she attempted to complete her education, in the subsequent semesters the disease's symptoms prevented her from doing so. The record clearly indicates that her continuous and progressive difficulty in walking, maintaining balance, and taking notes, in addition to tingling in her arms and legs and fatigue, prevented her from attending college on a full-time basis, i. e., "engaging in any substantial gainful activity."

*Reading v. Mathews,* 542 F.2d 993 (7th Cir. 1976), is clearly distinguishable. There, appellant Virginia Reading was denied child's disability insurance benefits on two grounds: her claimed disabilities, degenerative arthritis and eye impairments did not have their onset until well past her 22nd birthday, and there was no evidence that these handicaps resulted from earlier less serious handicaps which improved after age 22 to where they were no longer serious handicaps. Ms. Reading's eye problems did not require medical treatment beyond changes in glasses until she was 39 years old. Her degenerative arthritis did not appear until she was 29, and was not treated by a physician until she was 37. In the instant case, Miss Parish experienced the debilitating symptoms of, and was diagnosed as having, multiple sclerosis in April and September 1971, respectively. At that point she was not yet 21 years old. Although there was some question as to whether plaintiff had a spinal tumor, no one now disputes that this diagnosis was incorrect and that she has been afflicted with multiple sclerosis since at least September 1971. Nor is there any question that her present disability is due to the same cause, multiple sclerosis. Attending college on a part-time basis is not the equivalent of being able to engage in substantial gainful activity. Seven or eight classroom hours are much less demanding than full-time remunerative work. Even if study time of two hours for each classroom hour

is added it amounts to 24 hours a week at most. More important, one may miss occasional classes without penalty, and homework may be scheduled for those times when the student feels his or her best. Persons who are admittedly completely disabled are sometimes able to attend school on a part-time basis to seek specialized or advanced training that may enable them to be gainfully employed. Their ability to attend school on such part-time basis, however, does not establish an ability to be engaged in substantial gainful activity. Viewing the record as a whole, plaintiff sustained her burden of establishing that she was under a disability from a medically determinable physical impairment, multiple sclerosis, prior to her 22nd birthday.

The ALJ also relied heavily on the fact that plaintiff worked as a counselor at Oakland Community College or Oakland University from January until August 1975, as substantial evidence that she was not precluded from engaging in any substantial gainful activity between October 19, 1973, the date her insured status expired, and February 2, 1977, the date she filed for benefits. The fact that plaintiff worked, however, is not necessarily substantial evidence of substantial gainful activity. *Ziskin v. Weinberger*, 379 F.Supp. 124, 127 (S.D.Ohio, 1973) ("Plaintiff did work for a time as a school teacher after becoming age eighteen.... [P]laintiff was never a self sustained, capable school teacher. She acted as a highly spirited victim of polio who was the recipient of an unusual and commendable degree of pity, tolerance and indulgence"); *Simms v. Weinberger*, 377 F.Supp. 321, 327 (M.D.Fla.1974) (where plaintiff had worked a few weeks, "plaintiff should not be penalized for her perseverance and courage in seeking to overcome her disability"); *Lowe v. Finch*, 297 F.Supp. 667, 671 (W.D.Va.1969) ("[A] brief period of work under these somewhat sheltered conditions does not demonstrate an ability to perform work which is both substantial and gainful in a normal competitive work environment"); *Morrone v. Secretary, Health, Education and Welfare*, 372 F.Supp. 794 (E.D.Pa.1974); *But cf. Futernick v. Rich-*

ardson, 484 F.2d 647 (6th Cir. 1973). Exactly what Miss Parish's work involved is not clear. It appears that she counseled young people with school, drug, sexual, alcohol, and other problems. She was excused from this work to attend classes. During this period when she was still working, Dr. Gass described her gait as "jerky and broad based and uncertain on turns. She is quite unsteady." She had double vision and distortion in overlapping of images. There was a definite nystagmus, (a constant involuntary movement of the eyeball) and scanning (pronounciation of words in syllables or slowly and hesitatingly) in her speech. The fact that the school permitted her to continue in her counselor's job with these handicaps does not mean that she could be gainfully employed in a non-school setting. *Copley v. Richardson*, 475 F.2d 772 (6th Cir. 1973). Dr. Gass advised that "she is working too hard and that she ought to backtrack a little bit and live without so much stress as she is now having." Further, the school did request her to resign this job. Approximately 32 weeks of work over more than eight years during which plaintiff has been suffering from the progressive disease of multiple sclerosis can be characterized only as sporadic, not "substantial gainful activity" as that phrase is used in the Act. The phrase "substantial gainful activity" implies employment with some degree of regularity. We agree with the court in *Ellerman v. Flemming*, 188 F.Supp. 521, 526 (W.D.Mo.1960), which held:

> The activity in which a claimant must be able to engage must not only be "gainful" but must also be "substantial". The determinative factor, therefore, is not how substantial the gain, but how substantial the *activity*, in which the claimant can be gainfully engaged.... "Substantial", as used in the Act, supra, is synonymous in the sense of belonging to the real nature of "activity" which a person can perform. It connotes "activity" as being real or actual, as opposed to transitory or apparent. It contains the idea of any "activity" which may be performed with some degree of regularity—

not occasionally, sporadically or infrequently.

Patricia Parish testified that she took the counseling job to see if she was able to work. In effect it was a trial job. However, after she returned from her August 23–30, 1975 hospitalization, her employer asked her to resign her counseling job as "she could not work the hours."

 It is clear that plaintiff's disability forced her to cease her courageous attempt to counsel young people, and:

> Where an individual is forced to discontinue his work activities after a short time because his impairment precludes continuing such activities, his earnings would not demonstrate ability to engage in substantial gainful activity.

20 C.F.R. § 404.1534(a).

The Social Security Act and the Regulations specifically provide for a period of trial work of up to nine months duration after an application for disability is filed. 20 C.F.R. § 404.1536. In such cases services rendered during the trial work period are deemed not to have been rendered for the purpose of determining whether the individual's disability ceased during such period of trial work. It would appear reasonable to apply the same principle to an attempt to work before filing an application for benefits. Unless the brief period when Miss Parish worked is treated as a period of remission rather than a termination of her disability she is harshly treated because of the intrinsic on-again off-again nature of her disability. The period when she is able to work is too short to enable her to establish a right to disability benefits based on her own work, 42 U.S.C. § 423, (one-half of the quarters between attaining the age of 21 and the month in which the individual becomes disabled, or if that period is less than 12 quarters, then not less than 6 quarters are required) yet prevents her from receiving child's disability benefits.

Thus although plaintiff did secure temporary employment after the onset of multiple sclerosis, that employment, because of a disability which *began* prior to her reaching age 22, was inevitably of a temporary nature and cannot be considered substantial gainful activity which would preclude plaintiff's eligibility for benefits. There is no evidence that plaintiff was ever free from multiple sclerosis after September 1971. What occurred from January until September 1975 was a brief period of remission. Multiple sclerosis is an incurable, progressive disease subject to such periods of remission and exacerbation. Other courts have recognized both these aspects of disabling diseases in dealing with social security claimants who are victims of multiple sclerosis or similar diseases. *Patton v. Finch*, 305 F.Supp. 810 (W.D.N.C.1969); *Morrone v. Secretary, supra*. Because the January until August 1975 period wherein plaintiff attempted to work and attend school was unquestionably a period of remission, we believe the ALJ erred in placing undue reliance on this brief and temporary interruption of plaintiff's progressively disabling condition. Rather, he should have considered that time-span as merely a period of remission in a continuing disability in making his finding. Under the current regulations, the ALJ is required to do so.

> In conditions which are episodic in character, such as multiple sclerosis or myasthenia gravis, consideration should be given to frequency and duration of exacerbations, length of remissions, and permanent residuals.

20 C.F.R. Subpart P, App. 1, § 11.00(D) (following § 404.1539), revised as of April 1, 1980. Although this regulation was not in effect at the time the ALJ heard this case, we note that it is not a new law but merely a codification of the standards to be used by the agency in deciding cases like the instant one.

The judgment of the District Court is reversed. This case is hereby remanded to the District Court for remand to the Social Security Administration for determination of the precise amount of disability benefits to which the plaintiff is entitled.