Stephen F. WILCOX,
Plaintiff–Appellant,

v.

Louis D. SULLIVAN, Secretary of
Health and Human Services,
Defendant–Appellee.

No. 89–2257.

United States Court of Appeals,
Sixth Circuit.

Argued July 30, 1990.
Decided Oct. 26, 1990.

Edgar Jerome Dew (argued), Goodman, Eden, Millender & Bedrosian, Detroit, Mich., for plaintiff-appellant.

Donna Morros Weinstein, Chief Counsel, Henry S. Kramzyk (argued), Dept. of Health and Human Services, Office of the General Counsel, Region V, Chicago, Ill., Francis L. Zebot, Asst. U.S. Atty., Detroit, Mich., for defendant-appellee.

Before KEITH and KRUPANSKY, Circuit Judges; and JORDAN, District Judge.*

KEITH, Circuit Judge.

Plaintiff, Stephen Wilcox ("Wilcox"), appeals from the district court's October 25, 1989 memorandum opinion and order granting summary judgment in favor of defendant Louis D. Sullivan, the Secretary of Health and Human Services ("the Secretary"). Wilcox contends that the district court erred in finding that substantial evidence supports the Secretary's decision that Wilcox was not disabled from multiple sclerosis prior to April 15, 1988. Finding that Wilcox was disabled prior to April 15, 1988, we REVERSE.

## I.

### A.

Born on June 14, 1956, Wilcox has a high school General Equivalency Diploma and received vocational training in electronics and iron and sheet metal work. He has been employed as a press operator, a hi-lo operator, and a gas station attendant; his most recent employment was as a supervisory journeyman sheet metal worker. On October 2, 1981, while employed as a sheet metal worker, Wilcox experienced pain in his spine and numbness in his lower extremities and chest area. On October 26, 1981, Wilcox visited a general surgeon, Dr. George Tsiatales, complaining of pain and muscle injury to his spine. As of December 4, 1981, Dr. Tsiatales evaluated and diagnosed Wilcox as possibly having multiple sclerosis and collagen disease. Based on the results of a neurological evaluation at the Neurology Clinic of Harper Grace Hospital in Detroit, Michigan, Wilcox was

---

* The Honorable Leon Jordan, United States District Judge for the Eastern District of Tennessee, sat by designation.

diagnosed as having either multiple sclerosis or collagen disease. From 1981 onward, Wilcox's condition progressively worsened.

On January 21, 1983, Wilcox was hospitalized for right-sided weakness, numbness and slurred speech. At his union's request, Wilcox underwent an extensive examination at the Neurology Clinic of the University of Michigan in Ann Arbor. This examination was performed to determine if Wilcox's condition was work related. Wilcox was diagnosed as having multiple sclerosis.

Multiple sclerosis is characterized by periods of exacerbation and remission. Although the record below clearly reflects several periods of exacerbation, most of Wilcox's examinations were conducted while the disease was in remission. While undergoing a neurological examination as an out-patient, Wilcox's diagnosis was confirmed on March 21, 1983. Although there were no severe neurological abnormalities, a CT scan revealed a lesion in the high-left frontal-parietal junction of his brain.[1] Since 1983, Wilcox has undergone numerous neurological examinations and evaluations.[2]

Despite his failing condition, Wilcox continued to work, and in February 1984, he went to Florida.[3] In the spring, Wilcox resumed his employment in Michigan. While working on July 1, 1984, a fragment of metal lodged in his left eye, and he was taken to the University of Michigan Hospital. After the fragment was removed, Wilcox complained of double vision and weakness in both legs. The examining physician determined that Wilcox had had a flare-up of his multiple sclerosis, prescribed medication (prednisone therapy), and recommended that Wilcox return in two months for a follow-up visit.

Following his discharge from the hospital, on July 18, 1984 Wilcox applied for disability insurance benefits. The Secretary conducted a consultative examination, and the examining physician reported that although the disease was in remission, Wilcox had a long history of multiple sclerosis. The application was initially denied on September 5, 1985; Wilcox sought no further review and the Secretary's decision became final.

In 1985, Wilcox resumed his employment as a sheet metal worker for Gizzi Metal Erectors in Taylor, Michigan. Due to his deteriorating condition, Wilcox stopped working on February 24, 1986. On April 16, 1986, Wilcox reapplied for disability benefits alleging that multiple sclerosis prohibited him from working. Dr. Tsiatales reported, on April 21, 1986, that Wilcox's condition had been deteriorating for the last ten to eleven months as evidenced by more weakness and speech difficulty.[4] In conjunction with his application for disability benefits, Wilcox underwent a con-

1. A brain lesion is characteristic of individuals suffering from multiple sclerosis. On March 29, 1983, Wilcox underwent a lumbar puncture to obtain spinal fluid. Studies performed on the fluid were consistent with a diagnosis of multiple sclerosis.

2. Other examinations were conducted in 1983: (1) in a follow-up examination at the University of Michigan Hospital on May 2, 1983, Wilcox was diagnosed as having multiple sclerosis. The report noted that Wilcox had brief episodes of exacerbated symptoms in December 1981 and January 1983; and (2) in an annual check-up at the University of Michigan Hospital on October 25, 1983, Wilcox stated that he had had two exacerbations in December 1981 and February 1983. Both exacerbations lasted two months. The examining physician concluded that Wilcox had had multiple sclerosis for two years and that it was currently in remission.

3. While working in Florida, Wilcox developed right leg weakness which made it difficult for him to walk. A neurologist in Florida prescribed prednisone steroidal therapy to be tapered over a one-month period. After three weeks of therapy, the symptoms resolved. In April 1984, however, Wilcox developed facial numbness and numbness over half of his body. Again prednisone steroidal therapy was administered; the symptoms resolved after one week.

4. Dr. Tsiatales noted that Wilcox was slow thinking and careful in all daily activities while trying to control symptoms of muscle weakness, joint instability and pain. Although Dr. Tsiatales reported no depression, he was certain that Wilcox was distressed at being disabled so early in life. Furthermore, Wilcox had no health insurance or personal income to cover the expenses for additional neurological examinations. In Dr. Tsiatales' opinion, Wilcox was unemployable.

sultative psychological examination. Dr. Shore, the examining psychologist, found Wilcox to be of average intelligence without psychosis. His speech was mildly dysarthric.[5] She noted, however, that he was preoccupied with his declining physical condition and the increasing physical restrictions resulting from his functional inabilities. Wilcox was also distressed over his marital and family difficulties. She diagnosed him as being moderately depressed and suffering from an organic personality syndrome. Dr. Shore recommended that Wilcox undergo a full neurological evaluation.

On May 14, 1986, Dr. Robert D. Teasdall conducted a full neurological examination of Wilcox at the request of the Michigan Disability Determination Service. Although Wilcox's reflexes were sluggish in the upper extremities, Dr. Teasdall determined that there were no significant motor or sensory abnormalities. Dr. Teasdall found no disability and was uncertain whether Wilcox has multiple sclerosis. Wilcox's application was denied initially and again upon reconsideration.

On July 29, 1986, Wilcox was admitted to William Beaumont Hospital in Royal Oak, Michigan, complaining of pain in the upper thoracic spine, left ear and jaw. He also complained of double vision, intermittent gait problems and indicated that he fell off his porch the previous month. Although he had slight weakness when extending all extremities, his muscle strength seemed to be generally good. He also had difficulty focusing on specific topics. He was diagnosed as having either multiple sclerosis with possible exacerbation involving back and left jaw pain or multiple sclerosis exacerbation due to increased stress brought on by his divorce.[6]

Wilcox requested a hearing which was held on February 18, 1987. Because of his condition, he neither appeared at the hearing nor testified.[7] From the evidence presented, the Secretary concluded that Wilcox stopped working because of a shortage of work and not because of his medical condition. On August 17, 1987, an Administrative Law Judge ("ALJ") determined that Wilcox was not disabled. This determination became the Secretary's final decision on January 25, 1988 when the Appeals Council denied review.

On April 15, 1988, Wilcox was hospitalized for an exacerbation of multiple sclerosis. He underwent neurological evaluations which revealed a history of multiple sclerosis, degenerative changes in his brain, depression, emotional withdrawal and anxiety. Wilcox was released on April 21, 1988 and given medication and a schedule of follow-up visits.

### B.

Wilcox then commenced this action seeking judicial review of the Secretary's final decision and benefits from February 24, 1986, the last date that he was gainfully employed. The district court assigned Wilcox's case to a magistrate. On July 14, 1988, the magistrate issued an order re-

---

5. Dysarthric speech refers to imperfect articulation due to disturbances in muscle control that result from damage to the central or peripheral nervous system.

6. In September 1978, Wilcox married Wilma L. McDonald; from this union one son was born in July 1981. In 1986, partly because of his multiple sclerosis, his wife sought a divorce.

 After his hospitalization in July 1986, Wilcox underwent additional evaluations. At the direction of the Social Security Administration, Wilcox was given a psychological evaluation on September 8, 1986. Dr. Caknipe, the examining physician, diagnosed a wide array of personality disorders, but could not attribute them to an organic personality disorder. He did note that Wilcox was depressed and had an emotional disorder. On December 16, 1986, at the request of counsel, Dr. Gerald Shiener evaluated Wilcox. Dr. Shiener diagnosed multiple sclerosis complicated by an organic personality syndrome. Furthermore, he believed the condition was disabling and interfered with Wilcox's memory, use of his limbs, emotions, and his interaction with others. Characteristic of multiple sclerosis, Dr. Shiener projected that Wilcox's condition would become worse as the disease progressed.

7. Wilcox opted not to attend the hearing due to his concern for controlling his bladder and bowel. At the hearing, Dr. John T. McHenry testified that concern with urinary and bowel function is very common among persons with multiple sclerosis.

manding the case for consultative psychiatric and neurological examinations, and a new hearing to obtain additional vocational testimony.[8] Pursuant to the order, the Appeals Council vacated its prior decision.

On August 16, 1988, a new administrative hearing was held before a different ALJ. Again, because of his deteriorating condition, Wilcox did not appear or testify. The ALJ found that because of an exacerbation of multiple sclerosis on April 15, 1988, Wilcox had become disabled from an organic brain and personality syndrome. On August 24, 1988, the ALJ found that Wilcox became disabled as of April 15, 1988. The ALJ determined the date of disability partly because Wilcox did not appear at the hearing. On September 20, 1988, the Appeals Council adopted the ALJ's decision as the Secretary's final decision.

On September 14, 1988, Wilcox submitted objections to the ALJ's decision arguing that it was affected by his nonappearance. The Appeals Council vacated the ALJ's recommended decision on October 24, 1988, and remanded the case to yet another ALJ. On January 27, 1989, an ALJ issued another recommended decision finding that Wilcox was disabled as of his April 15, 1988 hospitalization. The ALJ determined the date of disability despite the finding that as early as 1986, there was evidence of an organic brain syndrome that resulted in a decrease of Wilcox's intellectual functioning. On April 21, 1989, the Appeals Council adopted the ALJ's conclusion which became the Secretary's final decision. The Secretary awarded Wilcox benefits effective April 15, 1988.

On June 15, 1989, both parties stipulated that the case be reinstated for further judicial review, and the matter was assigned to a magistrate. After both parties filed motions for summary judgment, the magistrate issued a report and recommendation denying Wilcox's motion for summary judgment. Wilcox promptly filed objec-

tions arguing that the magistrate failed to consider *Parish v. Califano*, 642 F.2d 188 (6th Cir.1981). The district court reviewed the matter, adopted the magistrate's report and recommendation, and granted the Secretary's motion for summary judgment. Wilcox filed a timely notice of appeal with this court.

## II.

Wilcox contends that the district court erred in finding that he was not disabled prior to April 15, 1988 because substantial evidence supported the Secretary's decision that he could perform a significant number of sedentary jobs. He maintains that the record below unquestionably shows that he was disabled from multiple sclerosis before April 15, 1988, and that he left his employment because of his increasingly debilitating condition. The Secretary contends, however, that Wilcox maintained the residual functional capacity to perform a full range of sedentary work prior to April 15, 1988. Wilcox's condition was not so severe as to preclude him from performing any work whatsoever. Furthermore, despite his debilitating condition, Wilcox continued to work until February 24, 1986. We find Wilcox's argument persuasive.

 Our review of the Secretary's decision is limited to determining whether there is substantial evidence in the record to support the findings. Substantial evidence has been interpreted to be more than a mere scintilla; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Kirk v. Secretary of Health & Human Services*, 667 F.2d 524, 535 (6th Cir.1981), *cert. denied*, 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983), *quoting Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). In determining this question, we review the evidence in the record taken as a whole. *Al-*

8. On July 23, 1988, Wilcox underwent a psychological examination. He was diagnosed as having an organic personality syndrome and a history of multiple sclerosis. On July 26, 1988, Wilcox underwent a neurological evaluation.

The evaluation revealed no evidence of continued disability or multiple sclerosis, but the evaluating physician noted that an exacerbation of multiple sclerosis could occur and would disable Wilcox.

*len v. Califano,* 613 F.2d 139, 145 (6th Cir.1980).

There is no dispute that Wilcox is disabled by multiple sclerosis. The record indicates that as early as December 1981, Wilcox exhibited signs of multiple sclerosis. While he continued to be employed as a sheet metal worker, his debilitating disease affected his work performance. The record also evidences that there were numerous occasions when Wilcox's condition was exacerbated and not in remission. During these periods of exacerbation, Wilcox was unable to work; in several instances he had to be hospitalized. The Secretary, nevertheless, concluded that his condition had not become disabling until his hospitalization on April 15, 1988.

In view of our decision in *Parish v. Califano,* 642 F.2d 188 (6th Cir.1981), we cannot support this conclusion. In *Parish,* the plaintiff suffered from multiple sclerosis before she reached twenty-two years of age, but she was able to work and attend school during periods of remission. The Secretary, focusing on the fact that the plaintiff was employed and attending school, concluded that she was not disabled until after her twenty-second birthday. The disease, therefore, had not prevented the plaintiff from engaging in substantial gainful employment. We reversed, finding that "[t]he fact that plaintiff *worked* ... is *not* necessarily substantial evidence of substantial gainful activity." *Id.* at 192 (citations omitted) (emphasis added). Judge Kennedy, writing for the panel, observed that notwithstanding intervals of normal activity during periods of remission, multiple sclerosis is a disabling disease:

Multiple sclerosis is an incurable, progressive disease subject to periods of remission and exacerbation. Because the ... period wherein plaintiff attempted to work and attend school was unquestionably a period of remission, we believe the ALJ erred in placing undue reliance on this brief and temporary interruption of plaintiff's progressively disabling condition. Rather he should have considered that time-span as merely a period of remission in a continuing disability in making his finding.

*Parish,* 642 F.2d at 193. *Accord Estes v. Railroad Retirement Bd.,* 776 F.2d 1436, 1438 (9th Cir.1985). Furthermore, in evaluating multiple sclerosis, or any other episodic disease, consideration should be given to the frequency and duration of the exacerbations, the length of the remissions, and the evidence of any permanent disabilities.[9]

*Parish* is controlling precedent in the present case. Wilcox was able to work during periods of remission. He was hospitalized in January 1983 after suffering disabilities that indicated he had multiple sclerosis. Since 1983, Wilcox has undergone numerous examinations, evaluations and hospitalizations during periods of exacerbation and remission. Because of his debilitating condition, Wilcox missed many work days. His condition progressively worsened, to the point where his union recommended that he stop working; he was subsequently laid-off. Given our reasoning in *Parish,* it is evident that Wilcox has been suffering from a progressive disability since 1981. Wilcox should not be penalized because he had the courage and determination to continue working despite his disabling condition.[10]

---

9. *See* Social Security Administration instructions for the assessment and evaluation of specific medical conditions. SSA Pub. 68–0424500, Neurological § 24580.015 Evaluation of Multiple Sclerosis (1988).

10. The Secretary contends that *Miller v. Secretary of Health and Human Services,* 843 F.2d 221, 224 (6th Cir.1988) controls as a severe impairment does not render a claimant disabled where he possesses the residual functional capacity to perform work available in the national economy. We disagree. In *Miller,* the claimant was an overweight, heavy smoker with chronic

lung disease who continued to smoke despite being advised of the dangers. The issue before the panel was determining the date of claimant's disability. In reviewing the question, the panel divided the relevant time period into two parts. During the first period, the claimant was still employed as a heat treatment laborer. Since he was engaged in substantial gainful activity during this period, he was not disabled. *Id.* at 223–24. During the second period, the claimant failed to present substantial evidence that he was disabled. *Id.* at 224. In the present case, the Administrative Law Judges who evaluated Wilcox's claim acknowledged that he had

### III.

The principles enunciated in *Parish* were not applied to the facts of this case. The Secretary erroneously relied on Wilcox's activities during the periods of remission as evidence of his substantial gainful employment. The record, when viewed in light of the well-reasoned principles established in *Parish,* lead us to conclude that Wilcox, who suffered from a progressively debilitating disease, was disabled by multiple sclerosis effective February 24, 1986. Accordingly, we REVERSE the district court's decision and REMAND for an award of benefits in accordance with this opinion.

*not* engaged in substantial gainful activity after February 24, 1986. Unlike the claimant in *Miller,* Wilcox is seeking benefits for a period when he was not gainfully employed. Furthermore, Wilcox not only stopped working in February 1986, but also submitted substantial evidence to show that he suffered from multiple sclerosis; his condition prohibited him from working and led to his withdrawal from the work force.