34 F.3d 1068
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Leslie A. TUOHY, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 93-1814.
 United States Court of Appeals, Sixth Circuit.
 Aug. 22, 1994.
 
 Before: KEITH, BOGGS and BATCHELDER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant Leslie Tuohy appeals the district court's order affirming the Secretary of Health and Human Services' denial of social security benefits. Ms. Tuohy asserts that there is not substantial evidence in the record to support the Secretary's determination that she is not entitled to benefits. For the reasons that follow, we reverse.
 
 I.
 A.
 
 2
 Ms. Tuohy was born on July 6, 1946, and was forty-two years old at the time her insured status expired on December 31, 1988.[1] Ms. Tuohy completed three years of college, and worked as an order clerk and material control clerk for General Motors until December 1982.
 
 
 3
 Ms. Tuohy filed an application for social security disability insurance benefits on March 23, 1989, alleging that she had become disabled and unable to work on December 11, 1982, at age thirty-six, as a result of multiple sclerosis. Benefits were denied initially and upon reconsideration by the Social Security Administration. Ms. Tuohy requested an administrative hearing, and on December 18, 1989, a hearing was held before an Administrative Law Judge (ALJ), at which testimony was obtained from Ms. Tuohy, vocational expert Ann Tremblay, and Ms. Tuohy's husband. On December 28, 1989, the ALJ issued a decision denying Ms. Tuohy's claim. Ms. Tuohy made a request for review of this decision, and the Appeals Council, in an Order issued December 11, 1990, remanded the matter to the ALJ for a new hearing.
 
 
 4
 A second hearing was held on May 10, 1991, before the same ALJ, with testimony being presented by witnesses from the first hearing, with the addition of testimony from Dr. Raymond Engelman, a medical advisor. On August 28, 1991, the ALJ issued a Decision again denying benefits to Ms. Tuohy. Ms. Tuohy requested review by the Appeals Council, but on May 28, 1992, the Appeals Council denied her request. The ALJ's decision thereby became the final decision of the Secretary in this matter.
 
 
 5
 Pursuant to 42 U.S.C. Sec. 405(g), Ms. Tuohy filed an action for judicial review of the Secretary's determination on July 30, 1992. The matter was referred to a magistrate judge, and on December 4, 1992, the magistrate judge issued a Report and Recommendation finding that substantial evidence supported the Secretary's decision. The district court adopted the magistrate judge's Report and Recommendation.
 
 B.
 
 6
 Multiple sclerosis (MS) is a chronic, slowly progressive disease of the central nervous system. The etiology of the disease is still unknown, and treatment varies according to the symptoms experienced by the victim. The disease is characterized by periods of exacerbation, in which the victim experiences acute aggravation of her symptoms, and periods of remission, in which the victim may be able to function almost normally.
 
 
 7
 Ms. Tuohy was first diagnosed as suffering from MS in 1978. In August of 1978, Ms. Tuohy experienced shock-like sensations upon bending her neck (Lhermitte's sign), followed by numbness in both legs and her right arm and loss of vision in her right eye. Also in 1978, though it is unclear from the record exactly when, Ms. Tuohy had an episode of retrobulbar neuritis with blindness, lasting about three weeks. In June of 1979, Ms. Tuohy experienced another exacerbation of her MS involving numbness over her entire right side. In December of 1979, one of Ms. Tuohy's physicians noted that Ms. Tuohy continued to have problems with her right arm, and that she was having problems with frequent urination and incontinence.
 
 
 8
 On December 18, 1982, Ms. Tuohy experienced a major exacerbation of her MS, requiring her to be hospitalized from December 18 to December 31. The medical records indicate that Ms. Tuohy was unable to do more than just barely move her legs, that she suffered from a complete lack of coordination, and that she was unable to feed herself. After this exacerbation, Ms. Tuohy ceased working in her position as a control clerk for General Motors. When discharged from the hospital, Ms. Tuohy's doctors considered her prognosis to be poor to fair.
 
 
 9
 On April 11, 1983, Ms. Tuohy saw Dr. P.R. Causin, after having suffered another exacerbation of her condition that caused a deterioration in her ability to walk. Dr. Causin observed that Ms. Tuohy's left leg went into severe internal rotations when she put her attention to walking; however, Dr. Causin also noted she was able to walk without an assistive device, though she did hold onto the furniture to support herself. Dr. Causin referred Ms. Tuohy for physical therapy, and on May 20, 1983, Henry Pit-og, a registered physical therapist, opined that twelve sessions of physical therapy had improved her strength, coordination, and gait. However, Mr. Pit-og also noted that Ms. Tuohy still inverted her left leg, and that her hips still hurt and her left leg sometimes buckled when walking.
 
 
 10
 On June 24, 1983 Dr. MacKenzie examined Ms. Tuohy and noted that she was in remission and was able to walk with weakness and a slight internal rotation of the left leg. Over the next several months, Ms. Tuohy suffered from a number of other symptoms which were ameliorated to varying degrees by medication. On September 29, 1984, Ms. Tuohy talked to Dr. Gumpper about going back to work. Dr. Gumpper advised against returning to work because her symptoms had not completely disappeared and he thought the stress of returning to work might exacerbate Ms. Tuohy's symptoms.
 
 
 11
 On March 6, 1985, at the direction of the Disability Determination Service, Ms. Tuohy underwent a neurological examination performed by Dr. Robert H. Sturman, a consultative examiner. Despite largely unremarkable clinical findings, Dr. Sturman concluded that Ms. Tuohy was permanently disabled.
 
 
 12
 On January 22, 1987, Dr. MacKenzie reported that Ms. Tuohy's last very severe exacerbation occurred in 1984 and that she seemed to be doing well, although she easily became fatigued. In response to an inquiry from Ms. Tuohy's former employer, GM, Dr. MacKenzie responded that "she is totally disabled for any permanent occupation."
 
 
 13
 On July 16, 1987, Dr. Nicholas N. Velarde examined Ms. Tuohy. Dr. Velarde noted that up until a few months prior to his examination of her, Ms. Tuohy had been physically active. He also noted that her most bothersome symptom at that time was progressive numbness and paresthesia in both feet, gradually ascending to her legs. In addition, Ms. Tuohy's station and gait were unremarkable and she was able to tandem walk without any difficulty. It was Dr. Velarde's conclusion that Ms. Tuohy suffers from "chronic multiple sclerosis with periodic exacerbations and progressive disability."
 
 
 14
 In September 1988, Ms. Tuohy discussed dietary concerns with R. Bundesman, R.N., and expressed a desire to lose weight. The nurse expressed concern because Ms. Tuohy was attempting to engage in activities which could raise her body temperature and induce exacerbations of her MS.
 
 
 15
 On December 6, 1989, Dr. Parul Sud reviewed Ms. Tuohy's treatment history and summarized her condition as follows:
 
 
 16
 Ms. Tuohy was followed in our clinic and eventually hospitalized at McLaren in late 1982 due to a severe exacerbation of MS during which she was unable to coordinate use of her extremities or care for her basic needs. Ms. Tuohy has been unable to return to work since that time, although she has expressed a desire to attempt this. We had discouraged her from doing so, as she needs to be able to pace herself and rest whenever needed to maintain her present level of functioning.
 
 
 17
 Over the last few years this woman has continued to have significant impairment in her ability to function on a chronic basis, despite her retired status. In addition, she has experienced acute exacerbations.... Since 1982, she has continued to have marked fatigue and muscle weakness, blurred vision, severe vertigo lasting for many days at a time, and bladder problems characterized by frequency, urgency, occasional incontinence, and nocturia--all related to her multiple sclerosis. These symptoms come in various combinations when she attempts to push herself mentally or physically, experiences raised body temperature from activity or environmental conditions, has to cope with stressful matters, or for no apparent cause....
 
 
 18
 This patient must also be able to, at will, lie down and rest for extended periods of time.
 
 
 19
 I believe that the symptoms Ms. Tuohy has had over the years are all consistent with her illness. I do believe that Ms. Tuohy has a strong medical reason to avoid mental and physical stress of competitive employment.
 
 
 20
 Dr. Raymond Engelman testified at Ms. Tuohy's administrative hearing that the diagnosis of MS was definitely established by the record; however, he opined that Ms. Tuohy's condition did not meet or equal the severity of the requirements of the Listing of Impairments. See 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, Sec. 11.09. Dr. Engelman described Ms. Tuohy's periods of exacerbation as "short bursts or short periods, during which she was having difficulty with her relapsing type of MS, which can be--is quite common in some individuals."
 
 
 21
 Ms. Tuohy testified that she experiences a number of symptoms of her MS on a persistent and daily basis. She testified that she has very little to no feeling in her hands and feet, that she continues to have bladder problems, and that she experiences loss of vision. Ms. Tuohy also testified that she has experienced severe fatigue since the onset of her MS, and that she continues to have persistent hip pain. Ms. Tuohy explained that for at least the last five to six years she has had two to three "bad" days a week; on a bad day, she spends most of the day lying down. Ms. Tuohy's husband, Michael Tuohy, testified that on bad days Ms. Tuohy has absolutely no [bladder] control, that she must make frequent trips to the bathroom, and that she experiences severe headaches.
 
 
 22
 Ms. Tuohy also testified that she is able to drive a car, but limits her driving to short trips; that she plays cards twice a month for two to three hours at a time, and that in order to feel useful she sometimes performs volunteer work for two hours at a time at a hospice.
 
 
 23
 Ann Tremblay testified as a vocational expert, and classified Ms. Tuohy's past work as an order clerk and as a material clerk as semi-skilled and exertionally light. Ms. Tremblay concluded that giving full credence to Ms. Tuohy's testimony, there would be no jobs that she could perform. The ALJ then posed a series of hypotheticals to Ms. Tremblay, and asked for her determination of jobs available assuming a claimant who met the limitations of his hypotheticals. The ALJ's hypotheticals were based on the medical findings of several of the physicians who examined Ms. Tuohy; however, each hypothetical assumed the most positive set of factors in any given medical report. Based on Ms. Tremblay's answers to his hypotheticals, the ALJ concluded that Ms. Tuohy retained the residual functional capacity to perform sedentary work-related activities with some limitations.
 
 II.
 A.
 
 24
 This court's review of the Secretary's decision is limited to an inquiry whether the Secretary's findings are supported by substantial evidence. McCormick v. Secretary of HHS, 861 F.2d 998, 1001 (6th Cir.1988). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Casey v. Secretary of HHS, 987 F.2d 1230, 1233 (6th Cir.1993). Furthermore, it is the Secretary, rather than the court, who "is charged with the duty to weigh the evidence [and] to resolve material conflicts in the testimony." Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir.1990).
 
 
 25
 It is established that a person afflicted with MS is not per se disabled under the social security regulations. Wilcox v. Sullivan, 917 F.2d 272 (6th Cir.1990). In evaluating multiple sclerosis, consideration should be given to the frequency and duration of the exacerbations, the length of the remissions, and the evidence of any permanent disabilities. Id. at 277.
 
 
 26
 In the instant case, the Secretary found that Ms. Tuohy had not engaged in substantial gainful activity since December 31, 1988. In addition, the Secretary, relying on the testimony of the medical advisor, determined that Ms. Tuohy did not have an impairment or combination of impairments listed in, or medically equal to an impairment listed in, the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A (1993). The Secretary further found that Ms. Tuohy overstated the extent of her symptomatology and that her subjective complaints were not supported by the objective or clinical evidence of record. The Secretary found that Ms. Tuohy retained the residual functional capacity to perform sedentary work-related activities except for jobs that required prolonged walking or standing, strong grip strength in her right hand, or working at unprotected heights or around moving machinery. Finally, the Secretary relied on the testimony of the vocational expert to determine that Ms. Tuohy could perform jobs that exist in substantial numbers in the national economy, and, therefore, was not disabled.
 
 B.
 
 27
 Ms. Tuohy contends that the district court erred in affirming the Secretary's decision that there was substantial evidence to support a finding that she was not disabled prior to December 31, 1988. In this appeal, Ms. Tuohy advances three arguments in support of her position. First, Ms. Tuohy contends that the ALJ erred in rejecting the opinions of two of her treating physicians and the consultative examiner that she was permanently disabled. Second, she argues that it was unreasonable for the ALJ to rely on the testimony of Dr. Engelman, the medical advisor. Finally, she asserts that the ALJ improperly rejected her own testimony of debilitating symptoms, and improperly determined that she retained the residual functional capacity to perform sedentary work.
 
 1. Treating Physicians' Opinions
 
 28
 We address first Ms. Tuohy's contention that the ALJ improperly rejected the opinions of her treating physicians and the consultative examiner. It is useful at this point to briefly recap the opinions of the doctors relied upon by Ms. Tuohy. On March 6, 1985, Dr. Robert H. Sturman, the consultative examiner Ms. Tuohy was sent to by the Disability Determination Service, concluded "I would consider her disabled and permanently so." On January 22, 1987, Dr. J.W. MacKenize noted, "I have made out a slip stating that she is totally disabled for any permanent occupation." And, on December 6, 1989, Dr. Parul Sud wrote, "I do believe that Ms. Tuohy has a strong medical reason to avoid mental and physical stress of competitive employment."
 
 
 29
 It is the law of this circuit that, "[t]he medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference. This is true, however, only if the treating physician's opinion is based on sufficient medical data." Harris v. Heckler, 756 F.2d 431, 435 (6th Cir.1985). This court, addressing the so-called "treating physician rule" has explained, "[t]he reason for such a rule is clear. The treating physician has had a greater opportunity to examine and observe the patient. Further, as a result of his duty to cure the patient, the treating physician is generally more familiar with the patient's condition than are other physicians." Walker v. Secretary of HHS, 980 F.2d 1066, 1070 (6th Cir.1992).
 
 
 30
 In rejecting the opinion of the consultative examiner, Dr. Sturman, who concluded that Ms. Tuohy was permanently disabled, the ALJ noted, "the doctor gave no reason for this [opinion], and it certainly is not substantiated by the clinical and laboratory findings set out in this report." The ALJ's rejection of Dr. Sturman's conclusory statement that Ms. Tuohy is permanently disabled is justified based on the fact that this was a one-time examination, and the complete lack of any corroboration for this conclusion in his objective or clinical findings.[2]
 
 
 31
 However, we cannot accept as easily the ALJ's rejection of Dr. Sud's opinion, and the ALJ's apparent decision to ignore the findings of Dr. MacKenzie. The ALJ rejected Dr. Sud's opinion because his "report does not contain the requisite clinical, diagnostic, or laboratory findings currently or of recent vintage to substantiate the doctor's totally disabled conclusion...." The report referred to is a letter written by Dr. Sud to Kathleen Powell, Ms. Tuohy's representative in these proceedings.[3] It is difficult to discern from the record, but Dr. Sud has been one of Ms. Tuohy's treating physicians since at least 1987. Dr. Sud's conclusion that Ms. Tuohy should avoid competitive employment was based on his personal knowledge of her case, and his review of her medical records; and, more importantly, his opinion is not directly contradicted by any medical evidence in the record.[4] Since there is no medical opinion or evidence contradicting Dr. Sud's conclusion, it is entitled to significant or complete deference. See King v. Heckler, 742 F.2d 968, 973 (6th Cir.1984); Harris v. Heckler, 756 F.2d 431, 435 (6th Cir.1985).
 
 
 32
 Finally, there is the opinion of Dr. MacKenize. Dr. MacKenzie has been one of Ms. Tuohy's treating physicians since her initial severe exacerbation of MS in 1982. On January 22, 1987, Dr. MacKenzie concluded that Ms. Tuohy was totally disabled from any permanent employment. Interestingly, in neither his original decision in this matter, nor in his decision after remand, does the ALJ address this finding by Dr. MacKenize. Thus, it stands as uncontradicted and unrejected. As in Harris, supra, Dr. MacKenize followed Ms. Tuohy's condition over a number of years and was, "therefore, in a unique position to evaluate [Ms. Tuohy's] condition. Consequently, his considered opinion that [Ms. Tuohy] was incapable of engaging in ... gainful employment and that [she] was 100 percent disabled must be given significant weight by this court." Harris, 756 F.2d at 435.
 
 
 33
 In an effort to remedy the ALJ's error of not addressing this significant opinion from one of Ms. Tuohy's treating physicians, the Secretary attempts to argue that Dr. MacKenize's conclusion is contradicted by the results of his physical examination of Ms. Tuohy. Specifically, the Secretary suggests that Dr. MacKenzie's notation that Ms. Tuohy is "doing very well," and that a systems review produced negative results, is substantial evidence contradicting his finding of disability. This demonstrates nothing less than a wilful misunderstanding of the progress and course of MS. This court has taken particular notice of the insidious nature of MS, due to its periods of remission in which the victim can function almost normally, only to be suddenly and completely debilitated by an exacerbation of the disease. In Wilcox v. Sullivan, 917 F.2d 272 (6th Cir.1990), this court stated,
 
 
 34
 Multiple sclerosis is an incurable, progressive disease subject to periods of remission and exacerbation. Because the ... period wherein plaintiff attempted to work and attend school was unquestionably a period of remission, we believe the ALJ erred in placing undue reliance on this brief and temporary interruption of plaintiff's progressively disabling condition. Rather he should have considered that time-span as merely a period of remission in a continuing disability in making his finding.
 
 
 35
 Id. at 277 (quoting Parish v. Califano, 642 F.2d 188, 193 (6th Cir.1981)). Thus, it is disingenuous for the Secretary to suggest that one notation by Ms. Tuohy's treating physician that she is doing very well contradicts his professional medical opinion, based on several years of treating her, that she is disabled from permanent employment.
 
 2. The Medical Expert
 
 36
 Ms. Tuohy next argues that it was unreasonable for the ALJ to rely on the testimony of the medical advisor, Dr. Engelman. It is clear that the ALJ rested his determinations that Ms. Tuohy did not meet or equal the listing of impairments and that Ms. Tuohy suffered from no functional limitations from the MS, on Dr. Engelman's testimony.
 
 
 37
 When asked by the undersigned if the severe impairment of multiple sclerosis he had previously diagnosed met or equalled any of the Listing of Impairments during the period in question over 12 continuous months, [Dr. Engelman] responded it did not. He stated he also considered Listing Section 11.09(A) based on difficulty with walking, complaints of hip pain at times, not knowing where the floor was, and complaining of right arm with weakness and pain. The doctor further testified claimant certainly did not meet or equal Listing Sections 11.04(B) or 11.00(C), because it was no longer than three months during the period in question.
 
 
 38
 When asked by the undersigned if the relevant medical evidence of record reflected any functional limitations from the multiple sclerosis during the period in question, the medical expert responded that it did not.
 
 
 39
 The crux of Ms. Tuohy's complaint with Dr. Engelman is that his usefulness as a medical advisor in this case is highly suspect due to the fact that he is a thoracic surgeon, with very little exposure to victims of MS. Dr. Engelman's qualifications, which are contained in the record, indicate that his medical specialty is thoracic surgery, and that he engages in direct patient care. These are the only qualifications presented, and there is no mention of any practice associated with neurological diseases generally, or MS specifically. Dr. Engelman testified that he had no particular expertise in the area of MS.[5] In addition, he was unable to define certain terms associated with the disease, at least one of which appears numerous times in Ms. Tuohy's medical records.
 
 
 40
 There is very little law addressing the issue of what qualifications a medical expert must possess in order to be competent to offer a medical opinion at an administrative hearing. The one case from this circuit addressing this issue is Sherrill v. Secretary of HHS, 757 F.2d 803 (6th Cir.1985). In Sherill, despite the fact that claimant's phychiatrists offered evidence that supported a finding that claimant was disabled due to a psychiatric impairment, the ALJ and district court relied on the testimony of a non-treating physician to deny this claim. Particularly disturbing to the Sherill court was the fact that the medical advisor being relied upon to rebut claims of psychiatric impairment was "a physician who specializes in internal medicine and sub-specializes in pulmonary disease." Id. at 805. The Sherrill court ultimately concluded that the medical advisor's testimony "alone does not rise to the level of substantial evidence establishing the nonexistence of [the] impairment." Id.
 
 
 41
 The situation at hand is similar insofar as the testimony of the medical advisor, a thoracic surgeon who does not specialize or have any expert knowledge in the area of MS, and indeed who sends his patients with MS to see a neurologist, does not rise to the level of substantial evidence to support the ALJ's determination that Ms. Tuohy did not suffer from any functional limitations from the MS during the period in question. This is especially true in light of the fact that two of Ms. Tuohy's treating physicians, who are experts in the area of MS, determined that she was permanently disabled. As this court has held, " 'the opinion of a nonexamining physician is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.' " Shelman v. Heckler, 821 F.2d 316, 321 (6th Cir.1987) (quoting Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir.1985)).
 
 
 42
 Finally, Ms. Tuohy argues that the ALJ improperly rejected the credibility of her testimony concerning her physical limitations. The Secretary argues that the ALJ properly rejected Ms. Tuohy's testimony because she engaged in activities that are inconsistent with her complaints of fatigue and because medication effectively controlled her other symptoms of MS. We find this aspect of the case very similar to that presented to this court in Cohen v. Secretary of HHS, 964 F.2d 524 (6th Cir.1992). In Cohen, the claimant suffered from Chronic Epstein-Barr virus and the associated chronic fatigue syndrome. Chronic fatigue syndrome, like MS, is characterized by periods of exacerbation and remission. Despite her illness, the claimant in Cohen attempted to lead some semblance of a normal life by continuing to engage in some of her pre-illness activities, and by attending a few law school classes. This court reversed the district court and the ALJ, finding that despite the fact that Ms. Cohen engaged in these activities, the nature of her illness was such that she was unable to engage in gainful employment in the national economy.
 
 
 43
 We find that the logic of Cohen is particularly apposite here. Ms. Tuohy has attempted to continue her life in as normal a fashion as possible, despite the fact that she suffers severe limitations. We believe that Ms. Tuohy's attempts to engage in normal activities is "a tribute to her courage and determination in refusing to surrender to the debilitating effects of her illness." Cohen, 964 F.2d at 530; see also Wilcox, 917 F.2d at 277 ("[Claimant] should not be penalized because he had the courage and determination to continue working despite his disabling condition.")
 
 III.
 
 44
 The ALJ in this case erroneously rejected and ignored the opinions of Ms. Tuohy's treating physicians. In addition, the ALJ incorrectly gave complete deference to a medical advisor who is a thoracic surgeon, with no specialized knowledge of MS, to the exclusion of Ms. Tuohy's treating physicians. The record, when viewed in its entirety, leads us to conclude that there is not substantial evidence to support the Secretary's determination that Ms. Tuohy suffered from no functional limitations. Quite to the contrary, there is substantial medical evidence in the record which supports a finding that Ms. Tuohy is permanently disabled. Accordingly, we REVERSE the district court's decision and REMAND for an award of benefits in accordance with this opinion.
 
 
 
 [1]
 A "period of disability" can only commence while an applicant is fully insured. 42 U.S.C. Sec. 416(i)(2)(C). The parties agree that Ms. Tuohy's insured status expired on December 31, 1988, and thus she cannot be found disabled unless she can establish a disability prior to that date. Gibson v. Secretary of HEW, 678 F.2d 653, 654 (6th Cir.1982)
 
 
 [2]
 We also note that this examination could easily have taken place on a "good" day in which Ms. Tuohy may have been functioning in a near-normal fashion. It is also possible that Dr. Sturman's conclusion that Ms. Tuohy is permanently disabled springs from a far greater knowledge of MS than is possessed by the ALJ or this court
 
 
 [3]
 Reproduced in relevant part in I.B., supra
 
 
 [4]
 The only evidence in the record, besides the ALJ's personal opinion, that even arguably contradicts Dr. Sud's opinion is found in an evaluation of Ms. Tuohy's residual function capacity, performed by Dr. Dwight Schroeder on September 16, 1983. The evaluation is no more than a form with a checked boxes. There are no clinical or medical findings associated with the form, and there is no indication that Dr. Schroeder made any review of Ms. Tuohy's medical record. Given the nature of MS, this examination could easily have been performed during a period of remission, i.e., on one of Ms. Tuohy's "good" days. This evaluation form does not constitute substantial medical evidence contradicting Dr. Sud's opinion; and, in any event, the ALJ did not rely on Dr. Schroeder's evaluation as a reason for rejecting either of Ms. Tuohy's treating physician's opinions
 
 
 [5]
 At the May 10, 1991 hearing in this matter, upon examination by Ms. Tuohy's representative, Dr. Engelman gave the following testimony:
 Q: Do you currently have an active practice?
 A: Yes.
 Q: What percentage of patients you cared for in your general practice over the years that had Multiple Sclerosis?
 A: Well, I'd say probably two or three.
 Q: Do you have any board certification in neurology?
 A: No, I do not.
 Q: Do you have any special training in evaluation and care of Multiple Sclerosis patients, or do you generally encourage the patient to consult with a neurologist to assist in that matter?
 A: Usually I consult with a--would advise consultation with a neurologist on care.